143 F.Supp.2d 1143 (2000)
Leslie MORGAN, et al., Plaintiffs,
v.
UNITED PARCEL SERVICE OF AMERICA, INC., and United Parcel Service, Inc., Defendants.
No. 4:94-CV-1184 (CEJ).
United States District Court, E.D. Missouri, Eastern Division.
June 26, 2000.
*1144 Kevin S. Kinkade, Virginia M. O'Leary, Kelly A. Lonnberg, O'Leary and Associates, Oakland City, IN, Jack J. Cavanagh, Jr., Partner, Paul J. Vaporean, Cavanagh and Hartweger, LLC, John J. Carey, Joseph P. Danis, Carey and Danis, St. Louis, MO, Darlene Robinson, Oakland City, IN, Charles H. Staples, Benchmark Legal Services, LLC, Virginia Beach, VA, Roxanne Barton Conlin, Des Moines, IA, for Plaintiffs.
Robert A. Kaiser, Daniel K. O'Toole, David W. Welch, Valerie M. Davis, Armstrong Teasdale, LLP, St. Louis, MO, William H. Brown, III, Schnader and Harrison, Philadelphia, PA, for Defendants.
Virginia M. O'Leary, O'Leary and Associates, Darlene Robinson, Oakland City, IN, for Movants.

MEMORANDUM AND ORDER
JACKSON, District Judge.
This matter is before the Court on various motions. All matters have been fully briefed.
*1145 Plaintiffs bring this action pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981, alleging individual and class claims of employment discrimination.[1] In addition to compensatory and punitive damages, plaintiffs seek equitable relief.
On October 30, 1996, the Court conditionally certified four classes of present and former United Parcel Service, Inc. (UPS) employees. The Court ordered bifurcation of the trial, severing the issues of liability and injunctive relief from the damages phase of the litigation. Further, the Court certified only the issue of liability and the request for injunctive relief as a Rule 23(b)(2) class action, reserving for future consideration certification of the damages issue. On April 25, 1997, the Court entered an order modifying the four classes.
In Count I, plaintiffs claim that UPS has violated Title VII by discriminating against black salaried employees nationwide in the implementation of pay and promotion policies. Specifically, plaintiffs allege that UPS systematically promotes black salaried employees more slowly and in smaller numbers than white salaried employees. The plaintiffs allege that through subjective selection procedures UPS retards and limits the advancement of black salaried employees. As a result, plaintiffs allege that black salaried employees "peak" at the position of center manager or below. The plaintiffs further allege that black center managers are paid less than similarly-situated white center managers. The plaintiffs allege that these practices are the result of a nationwide policy of discrimination.
As to the Title VII denial of upward mobility claim, the Court certified a class as follows:
With respect to the Title VII claim of denial of overall upward mobility, a class is certified consisting of all black salaried full-time employees of UPS nationwide employed as center managers in Operations (Package, Hub, Feeder, Air) or Human Resources at any time between December 20, 1991 and the date of judgment, and who worked as a supervisory or managerial employee of UPS for at least five years without being promoted above the center manager level.
As to the Title VII unequal working conditions and unequal pay claims, the Court certified a class as follows:
With respect to the Title VII claims of unequal working conditions and unequal pay, a class is certified consisting of all black salaried full-time employees of UPS nationwide employed as center managers in Operations (Package, Hub, Feeder, Air) or Human Resources at any time between December 20, 1991 and the date of judgment.
In Count III, plaintiffs allege that they have been denied overall upward mobility and have been subjected to unequal pay and discriminatory working conditions in violation of 42 U.S.C. § 1981. Specifically, the plaintiffs allege that UPS has refused to contract with black salaried employees for positions above the center manager level. The plaintiffs claim that this refusal has denied them the opportunity to participate in stock option purchase programs and in decisionmaking regarding the promotion of salaried employees.
*1146 As to the 42 U.S.C. § 1981 denial of upward mobility claim, the Court certified a class as follows:
With respect to the 42 U.S.C. § 1981 claim of denial of overall upward mobility, a class is certified consisting of all black salaried full-time employees of UPS nationwide employed as center managers in Operations (Package, Hub, Feeder, Air) or Human Resources at any time on or after June 17, 1989 and the date of judgment, and who worked as a supervisory or managerial employee of UPS for at least eight years without being promoted above the center manager level.
As to the 42 U.S.C. § 1981 unequal working conditions and unequal pay claims, the Court certified a class as follows:
With respect to the 42 U.S.C. § 1981 claims of unequal working conditions and unequal pay, a class is certified consisting of all black salaried full-time employees of UPS nationwide employed as center managers in Operations (Package, Hub, Feeder, Air) or Human Resources at any time on or after November 21, 1991 and the date of the judgment.
Two of the named plaintiffs, Leslie Morgan and Kenneth Stacker, also bring individual claims under Title VII. In addition, plaintiffs Morgan, Stacker, and Theodore Boldin bring individual § 1981 claims. In Count II, plaintiff Vernon Taylor asserts an individual claim that he was terminated based on his race, in violation of Title VII. In Count IV, Taylor asserts an individual claim of unlawful employment practices under 42 U.S.C. §§ 1981 and 1981a. Plaintiffs Bennie Clark, Joseph Hawkins, and Enoch Love were granted permission to intervene to assert individual claims of failure to promote and unequal pay under Title VII and § 1981. The Court also permitted intervention by the Equal Employment Opportunity Commission (EEOC).

I. BACKGROUND
UPS has eleven geographical regions in the United States. A region manager presides over each of the eleven regions. Each region has approximately six districts. The company has a total of more than seventy districts. A district manager presides over each district. Each district is subdivided into divisions which are responsible for different aspects of the defendants' business operations. Each division has a division manager who reports to the district manager. The divisions that are responsible for the pickup, sorting and delivery of packages are called package operations divisions. Each district has several package operations divisions. For example, in the Missouri District there are seven package operations divisions each of which is responsible for a designated geographic area within the district. Within each package operations division are six to eight package operations centers each supervised by a center manager. The entry-level management position at UPS is supervisor. Supervisors report to center managers.
UPS vests authority in district managers to promote employees to managerial positions at the level of division manager and below. In making these decisions, each district manager utilizes a procedure known as "People's Meetings." During these meetings, held approximately twice a year in each district, information is presented on each supervisor and center manager in the district. During at least some of the meetings, while the individual's performance and readiness for promotion is discussed, a color photograph of the person is displayed. As a result of the meeting, a list is compiled of the employees deemed most ready for promotion. When *1147 a promotional opportunity arises, the district manager consults the list and determines who will receive the promotion. Open positions are not posted. The decision to promote a division-level manager to a higher position is made outside of the district.
UPS evaluated its employees until 1993 using the Management Development Profile Analysis (MDPA), and then phased in the Career Development Management Appraisal (CDMA), which is copyrighted by UPS and is used nationwide. Both scales are six-point scales. Each managerial employee uses the MDPA, and later the CDMA, to evaluate the employees he or she supervises. For example, the district manager evaluates division-level managers, division-level managers evaluate center-level managers, and center-level managers evaluate supervisor-level managers. An employee's salary is directly linked to the employee's performance rating on the CDMA or MDPA. The rating dictates the range of salary increase available to the employee. For example, an employee who received a 5 on her CDMA or MDPA would be eligible for a 6% to 7% increase. Based on these guidelines, managers recommend raises for the employees they supervise. The district manager approves all salary increases.

II. DISCUSSION
UPS moves for summary judgment as to both the Title VII and the § 1981 class claims or, in the alternative, to decertify the class.
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
To establish a prima facie case of discrimination in a class action alleging a pattern or practice of discrimination, plaintiffs must prove that the defendant "`regularly and purposefully'" treated members of the protected group less favorably, and that unlawful discrimination was the employer's "`regular procedure or policy.'" EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 951 (8th Cir.1999) (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 335, 360, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). "`Proving isolated or sporadic discriminatory acts by the employer is insufficient.'" Id. (quoting *1148 Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875-76, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984)). Rather, plaintiffs must establish by a preponderance of the evidence that "`discrimination was the company's standard operating procedure  the regular rather than the unusual practice.'" Craik v. Minnesota State Univ. Bd., 731 F.2d 465, 470 (8th Cir.1984) (quoting Teamsters, 431 U.S. at 336, 97 S.Ct. 1843). Normally, a plaintiff in a pattern and practice action will produce evidence showing statistical disparities between similarly situated protected and unprotected employees, and the defendant will attempt to show in rebuttal that plaintiff's "`proof is either inaccurate or insignificant.'" Id. (quoting Teamsters, 431 U.S. at 360, 97 S.Ct. 1843).

A. Class Claims

1. Denial of upward mobility

In support of their claim of denial of upward mobility, plaintiffs initially presented an analysis conducted by Dr. Hilary Weiner, a Senior Social Science Analyst employed by the EEOC. Dr. Weiner sought to determine whether there was any racial disparity within the UPS divisions in the pattern of promotions from center manager to division manager and whether it takes longer for black employees to be promoted than it takes white employees. She did not do any statistical analysis to attempt to show that the likelihood of promotion is greater for white employees than for black employees.
With respect to the assertion that the pattern of promotions is discriminatory, Dr. Weiner performed a Wilcoxon test. Later, however, after examining the rebuttal reports of defendant's experts, Dr. Weiner acknowledged that she had used an incorrect Wilcoxon test. After performing the correct Wilcoxon test, she determined that no statistical difference existed in the pattern of promotions for black and white center managers to their first division level job.
No longer able to rely on the Wilcoxon test results to show racial discrimination in the pattern of promotions, plaintiffs now rely on Dr. Weiner's finding that there were no promotions of blacks to division manager in 35 of the approximately 90 UPS districts from between 1989 and 1998. Dr. Weiner, however, did not take into account whether there were any black center managers in those districts who were available for promotion to this higher level. UPS conducted a different analysis, which did take into account the availability factor. UPS's expert, Dr. David S. Evans, found that of the districts where there was at least one promotion, there were 45 districts in which no black center managers were promoted. He then sought to determine whether black promotions would have been expected to occur in those 45 districts had the promotion decisions been made without regard to race. In an effort to make this determination, Dr. Evans conducted a computer analysis of a random selection of the actual promotions in each UPS district within each year. The results showed that the number of districts with no black promotions was actually fewer than would be expected.
The plaintiffs' assertion that the pattern of promotions among districts shows racial discrimination in some districts does not tend to show discrimination on a national level. See Teamsters, 431 U.S. at 336, 97 S.Ct. 1843 (plaintiffs must show discrimination was the company's standard operating procedure). It may, in fact, undercut plaintiffs' proof of the existence of a standard operating procedure. Moreover, while center managers are not promoted to division manager positions solely within their own district, Dr. Evans presented evidence that a center manager is promoted to division manager outside his or her district *1149 54% of the time in Human Resources and 10% of the time in Operations. Accordingly, accounting for the availability of black center managers within a district is useful to some degree. Dr. Weiner acknowledged this by attempting to account for availability in each district with the Wilcoxon test. Nevertheless, plaintiffs' own expert admitted that she found no pattern of discrimination by district. The Court is not persuaded by plaintiffs' attempt to ignore that conclusion and instead rely solely on the fact that there were no black promotions in some districts.
Plaintiffs' experts did not perform any statistical analysis to attempt to show racial disparity in the likelihood of promotion. Instead, plaintiffs submit charts showing the percentage of black division-level employees, compared to the percentage of all black "officials and managers," "operatives and laborers," "blue collar workers," and "total UPS workforce." The charts show standard deviations from the expected rate of "officials and managers" ranging from 3.5 to 15.4.
UPS's expert, Dr. Evans, analyzed the likelihood of promotion by asking whether the actual number of black promotions from center manager to division manager is higher or lower than the expected number of black promotions. Dr. Evans examined whether black promotions by district and by region are consistent with black availability by district and by region. With respect to Operations, Dr. Evans found that in some years the number of black promotions was more than expected and in other years it was less than expected. In the aggregate, Dr. Evans found a net excess of five black promotions in the regional level analysis and a net excess of six black promotions in the district level analysis. In other words, in each situation there were more blacks promoted than would be expected in light of availability and the number of promotions actually made. With respect to Human Resources, there was a net deficit of three black promotions at the district level and a net deficit of two black promotions at the region level. Accordingly, Dr. Evans found no evidence of race discrimination in the likelihood of promotions.
The analyses relied on by the plaintiffs do not consider the correct population in determining the likelihood of promotion of black center managers. The classes certified by the Court consist of center managers who have not been promoted to division manager and above. Plaintiffs' reliance on comparisons to the entire UPS workforce and other subgroups which include individuals who are not class members is inappropriate. Plaintiffs have not attempted to compare the percentage of black division managers to the population from which they can be promoted. Under either a disparate treatment or a disparate impact theory, plaintiffs' reliance on a bottom line racial imbalance in the workforce is insufficient to establish that blacks are less likely to be promoted. See Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 650-51, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (proper comparison is between racial composition of at-issue jobs and racial composition of qualified persons in the relevant labor market). Additional, plaintiffs claim that UPS's subjective decisionmaking process and its failure to post notices of position vacancies have caused a racial imbalance is unavailing as they have not offered any statistical evidence to support it.
Dr. Weiner also performed a "cohort analysis" in an attempt to show that it took longer for black employees than for white employees to be promoted to division level positions. In her cohort analysis, Dr. Weiner matched pairs of black and white employees and compared them in terms of *1150 the length of time it took for them to reach center manager and division manager level. The conclusion Dr. Weiner reached based on the cohort analysis is that it takes black employees significantly longer to be promoted from their first full-time supervisory position to center manager level and from supervisor to division manager level than it takes similarly situated white employees.
Dr. Weiner conceded, however, that "[t]he data [she] looked at is not appropriate for examining the time to promotion from center manager to division level manager." Plaintiffs argue that it is appropriate to use an analysis that takes into account promotions to center manager level positions because they have never restricted their claim to time to promotion from center manager to division manager. The Court, however, has imposed this limitation by virtue of its definitions of the classes certified in this action. Consequently, the relevant focus is on the difference, if any, in time to promotion from center manager to division manager.
In a "survival analysis" he performed, Dr. Evans studied the time to promotion from center manager to district manager. Based on the results of his analysis, Dr. Evans concluded that the time to promotion from center manager to district manager is longer for white employees than it is for black employees. The Court finds that this analysis more appropriate to the issues involved in this action, as it examines only the time to promotion from center manager to division manager. Because the plaintiffs' evidence is based on Dr. Weiner's analysis which fails to examine the relevant time period and the relevant population, the Court finds that plaintiffs have not carried their burden of proving discrimination as to the two upward mobility classes.

2. Unequal working conditions

The Court finally finds that plaintiffs have not presented sufficient evidence for a class-based unequal working conditions claim. Plaintiffs do not provide any statistical evidence on any specific difference in working conditions, and instead rely solely on anecdotal evidence. The Court finds such evidence insufficient to show a class-based claim. See Teamsters, 431 U.S. at 336, 97 S.Ct. 1843 (plaintiff must show discrimination was company's standard operating procedure); McDonnell Douglas, 191 F.3d at 952 (anecdotal evidence did not demonstrate standard operating procedure).

3. Pay disparity

The Court next turns to the analysis of the class plaintiffs' claims of pay disparity. UPS, plaintiff-intervenor EEOC and the individual plaintiffs also move for summary judgment on the pay claims, and the Court will consider all motions on the issue together.
With respect to pay raises, plaintiffs' experts concluded that there was no statistically significant difference between the salary increases given to black and white center manager level employees during the period 1991 to 1997. In light of this evidence, plaintiffs cannot establish race discrimination on the issue of pay raises. See Hervey v. City of Little Rock, 787 F.2d 1223, 1228-29 (8th Cir.1986).
The plaintiffs maintain, however, that UPS engaged in racial discrimination with respect to salary levels. On this issue, plaintiffs presented a multiple regression analysis conducted by Dr. Weiner and another conducted by Dr. David C. Stapleton. Dr. Weiner reported after her final analysis a pay differential between black and white center managers of $1,275 to $2,200 per year, which she found to be statistically significant. UPS attacks Dr. *1151 Weiner's analysis on several bases, arguing that it contains both data and methodology errors. UPS argues that Dr. Weiner's original analysis removed much of the observable differences in performance by changing actual performance ratings from the six-point scale to either one or zero. As for data errors, UPS argues that Dr. Weiner uses the wrong matrix in her analysis, which leads to the inclusion in her analysis of a Hispanic individual who was mistakenly entered as having a salary of $642 million. In her rebuttal analysis, Dr. Weiner used the full six-point rating scale, but she included only two years of performance evaluations.
Dr. Stapleton found in his analysis that black center managers earned on average $562 to $852 per year less than white center managers after controlling for factors that cause pay to differ. Defendants also attack Dr. Stapleton's analysis. While UPS agrees that Dr. Stapleton's regression analysis is better than Dr. Weiner's, it argues that Dr. Stapleton's analysis does not include relevant variables, such as time spent as a union member, time spent as a part-time or full-time supervisor, whether the center manager ever worked in Air Operations, whether the center manager was ever a supervisor in Package Operations, and whether the center manager had ever been a division manager. The principal attack on Dr. Stapleton's analysis, however, is that it does not account for past pay differentials. Dr. Stapleton's regression model includes two previous performance evaluations, although he used the full six-point rating scale in his analysis.
UPS's expert Dr. Evans submitted a regression analysis which included the variables excluded by Dr. Stapleton. Dr. Evans included performance evaluations for every year in which performance evaluations were available. Dr. Evans found that when he did not include performance evaluations in his regression model, the pay differential between black and white center managers was statistically significant, although it was not "substantively significant." When Dr. Evans included all past performance evaluations in his regression model, he found that the pay differential between black and white center managers was not statistically significant.
Dr. Stapleton testified in his deposition that he did not believe all of the variables included by Dr. Evans should be included, as the variables may be caused by race discrimination. He also argues that Dr. Evans should have used dummy variables rather than excluding every individual with any missing data from his analysis.
The Court finds that the variables are properly included in Dr. Evans' analysis. The only variables for which plaintiffs have arguably presented proof of discrimination are the performance evaluations. Several plaintiffs have provided anecdotal evidence that they were given inadequate training and resources to adequately do their job in comparison to white center managers. While such factors could affect performance evaluations, plaintiffs have not presented evidence that they received lower evaluations for these reasons. The Court finds that the anecdotal evidence is insufficient to provide a basis for excluding performance evaluations from the analysis. See EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 952 (8th Cir.1999) (anecdotal evidence "demonstrate[d], at most, isolated discriminatory acts on the part of certain managers, rather than [defendant's] `standard operating procedure.'") (quoting Teamsters, 431 U.S. at 336, 97 S.Ct. 1843); see also Schultz v. McDonnell Douglas Corp., 105 F.3d 1258, 1259-60 (8th Cir. 1997) (probative value of statistical evidence that does not reflect significant differences among employees would be prejudicial and misleading); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, *1152 777-78 (8th Cir.1995) (statistical analysis failed to control for relative assessment score; presence of subjectivity in itself not grounds for challenging evaluation). Accordingly, the Court finds that defendants have shown that any pay disparity between black and white center managers is caused by factors other than race.

B. Individual Claims

It appears that the claims of the individual plaintiffs are based on evidence other than the statistical analyses. To the extent that their claims are based on additional evidence that is specific to each of them, the individual claims of plaintiffs Morgan, Stacker, Boldin, Clark, Hawkins, and Love survive summary judgment.
As to the claims of the individual plaintiffs based on 42 U.S.C. § 1981, there is a split of authority among district courts in this circuit as to whether an at-will employee in Missouri may bring a claim under § 1981. Compare Filbern v. Habitat for Humanity, Inc., 57 F.Supp.2d 833 (W.D.Mo.1999) (at-will employee can still maintain § 1981 claim), with Jones v. Becker Group of O'Fallon Div., 38 F.Supp.2d 793 (E.D.Mo.1999) (at-will employee cannot maintain § 1981 claim). This Court agrees with the analysis in Filbern that at-will employees in Missouri can still maintain a claim under § 1981. See Filbern, 57 F.Supp.2d at 835-36.

C. Vernon Taylor's Claims

UPS moves for summary judgment on Vernon Taylor's separate claims of discriminatory discharge based on Title VII and § 1981.
Taylor worked for UPS from June 1975 until March 1994. At the time of his discharge, he was a center manager at the Laclede center. Among Taylor's responsibilities was the preparation of pre-sheet audit reports. The purpose of the pre-sheet audit is to check the accuracy of the information that a driver records as he delivers packages. To prepare the report, a manager or supervisor records on a form information taken from randomly selected packages before they are delivered. After the driver completes his route, the prerecorded information is compared to the information that the driver has recorded during his deliveries. If the pre-sheet audit report is prepared "after the fact" from the driver's delivery records, the accuracy of the driver's documentation of the information cannot be measured.
In March 1994, Taylor, in preparation for a regional audit of his center, discovered that pre-sheet audit reports had not been prepared for certain days. To correct this deficiency, Taylor instructed two employees he supervised to create the reports after the fact. On March 24, 1994, Taylor met with District Manager Chuck Heusser and admitted what he had done. Heusser stated that he considered it an "integrity problem" and told Taylor that he would be discharged for falsifying company documents.
Taylor spoke with Rick Warlick on March 28, 1994, and gave Warlick the names of three other individuals  Galati, Fein, and Irwin  whom Taylor believed had done "things worse" than he had done and not been terminated. Warlick said that he would investigate, and later said that he believed Galati's actions were "non-related." Taylor appealed to higher level management officials, but the termination decision was upheld.
The Court will analyze Taylor's individual claims of discrimination under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). See Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir.) (en banc), cert. denied, *1153 521 U.S. 1119, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997). The analysis applies both to claims brought under Title VII and 42 U.S.C. § 1981. See Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir.1997).
Under the burden-shifting analysis, plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; Kim, 123 F.3d at 1056. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant articulates such a reason, the plaintiff must then demonstrate that defendant's reason is a pretext for discrimination. Id.; Kim, 123 F.3d at 1056. The burden of proving discrimination remains on the plaintiff at all times. St. Mary's Honor Center, 509 U.S. at 515-16, 113 S.Ct. 2742. The plaintiff must do more at the pretext stage than discredit defendant's reason; the plaintiff must show the defendant's articulated reason is a pretext for discrimination. See id.; see also Ryther, 108 F.3d at 837; Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir.1995).
In order to avoid summary judgment, a plaintiff alleging discrimination must present evidence that, when viewed in its entirety, (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir.1996); see also Krenik v. County of LeSueur, 47 F.3d 953, 958 (8th Cir.1995). Evidence of pretext alone is not sufficient to avoid summary judgment. Ryther, 108 F.3d at 837.
To establish a prima facie case of employment discrimination under Title VII, plaintiff must show that (1) he belongs to a protected group; (2) he was performing his job at a level that met defendant's legitimate expectations; (3) he was discharged; and (4) the discharge occurred under circumstances that create an inference of unlawful discrimination. Williams v. Ford Motor Company, 14 F.3d 1305, 1308 (8th Cir.1994).
Initially, the Court will assume that Taylor has established a prima facie case. However, UPS has articulated a legitimate, non-discriminatory reason for Taylor's discharge, and Taylor has not shown that reason to be pretextual.
In his deposition, Taylor testified that in 1992 a supervisor instructed him to create after the fact documentation for an "OJS ride" based on delivery records and that other employees had created presheet audit reports after the fact. Taylor, however, presents no evidence that the individuals responsible for the decision to terminate him knew of other employees who had engaged in the same conduct for which he was terminated. See Ghane v. West, 148 F.3d 979, 982 (8th Cir.1998) (plaintiff has burden to show he is similarly situated in all relevant aspects to individuals who were treated more favorably). He testified, in fact, that when he told Chuck Heusser his actions were common practice in the district, Heusser responded that he was new to the district and could not condone a manager with an integrity problem. Taylor did not provide to UPS the names of other individuals who had engaged in the same conduct, and he does not specify what conduct Galati, Fein, or Irwin engaged in that was worse than his conduct. Taylor has presented no evidence that a discriminatory motive was a determinative factor in his termination. See Ryther, 108 F.3d at 837.
To the extent Taylor asserts individual claims of denial of promotion or unequal *1154 pay, he has presented no evidence of discrimination with respect to those issues that are specific to him. Accordingly, summary judgment will be granted as to Taylor's discharge claims based on Title VII and § 1981.

D. Theodore Boldin's Claims

UPS moves to supplement and renew its previous motion for summary judgment as to individual plaintiff and class representative Theodore Boldin. The Court denied a motion for summary judgment as to Boldin's claims in an order dated February 13, 1996. UPS argues in its motion to supplement and renew summary judgment that Boldin's claim against UPS was not identified as an asset in his bankruptcy case. UPS argues that Boldin has not moved the bankruptcy court to reopen his file, as he previously represented to the Court he was willing to do. Boldin responds that he asked the bankruptcy trustee if the case needed to be reopened. He submits letters concerning the inquiry as to whether the case should be reopened, and an affidavit from his attorney in the bankruptcy case. UPS has also moved to strike the affidavit.
Even without considering the affidavit of Boldin's attorney, it appears that Boldin has inquired as to whether the bankruptcy proceedings should be reopened. Defendant's motion for summary judgment as to Boldin's claims will be denied, and the motion to strike the affidavit will be granted.

III. CONCLUSION
For the foregoing reasons,
IT IS HEREBY ORDERED that defendant's motion for summary judgment as to the class claims [# 391] is granted.
IT IS FURTHER ORDERED that defendant's motion to decertify the class [# 391] is denied as moot.
IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment on the class claims of pay disparity [# 361] is denied.
IT IS FURTHER ORDERED that defendant's motion for summary judgment as to plaintiff Vernon Taylor's individual claims [# 362] is granted. The individual claims of plaintiff Vernon Taylor in Counts II and IV of the complaint are dismissed.
IT IS FURTHER ORDERED that defendant's motion for summary judgment as to plaintiff Theodore Boldin's claims [# 360] is denied.
IT IS FURTHER ORDERED that defendant's motion to strike the affidavit of Richard Alan Cooper [# 399] is granted.
IT IS FURTHER ORDERED that defendant's motion to strike the affidavit of Dr. Hilary Weiner [# 374] is denied as moot.
IT IS FURTHER ORDERED that defendant's motion to strike the affidavit of Dr. Richard Harvey [# 374] is denied as moot.
IT IS FURTHER ORDERED that defendant's motion to strike the affidavit of Timothy Dall [# 0, filed 4-3-00] is denied as moot.
IT IS FURTHER ORDERED that defendant's motion for leave to file the affidavit of Troy Barger [# 0, filed 4-3-00] is granted.
IT IS FURTHER ORDERED that plaintiff Boldin's motion to substitute to correct a typographical error [# 363] is granted.
IT IS FURTHER ORDERED that plaintiffs' motion for leave to seek a Daubert hearing [# 380] is denied as moot.
IT IS FURTHER ORDERED that defendant's motion to bifurcate the individual and class claims [# 428] is denied as moot.
*1155 IT IS FURTHER ORDERED that defendant's motion for a protective order regarding pretrial material [# 424] is denied as moot.
NOTES
[1] Counts I and III assert claims on behalf of the named plaintiffs and members of the classes. Counts II and IV assert Title VII and § 1981 claims on behalf of Vernon Taylor.