IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 30, 2008

Charles R. Fulbruge III
Clerk

No. 07-31000

ELTON TAYLOR

Plaintiff-Appellant

v.

UNITED PARCEL SERVICE INC

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

DAVIS, Circuit Judge:

Plaintiff-Appellant Elton Taylor ("Taylor") appeals from the district court's grant of summary judgment in favor of Defendant-Appellee United Parcel Service, Inc. ("UPS"), dismissing Taylor's claims of discriminatory and retaliatory failure to promote and discriminatory and retaliatory pay disparity. We vacate and remand.

## I. BACKGROUND

Taylor worked for UPS in Louisiana from 1975 until his retirement in 2004. Prior to filing this suit on March 19, 2003, Taylor, an African-American, was a member of a class action lawsuit filed June 17, 1994, alleging race

discrimination in employment by UPS. Morgan v. United Parcel Service of America, Inc., 143 F. Supp. 2d 1143 (E.D. Mo. 2000), aff'd, 380 F.3d 459 (8th Cir. 2004), cert. denied, 544 U.S. 999 (2005). Specifically, Taylor was a member of the pay and promotion class and gave deposition testimony on behalf of the class. All claims in that class action were dismissed via summary judgment on June 26, 2000, and the Eighth Circuit affirmed on August 30, 2004.

While the Morgan dismissal awaited final determination on appeal, Taylor filed a Title VII charge on January 16, 2003 with the Equal Employment Opportunity Commission ("EEOC"). On March 19, 2003, he filed suit in the district court under 42 U.S.C. § 1981, Louisiana state law, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that UPS had denied him promotion on the basis of race and retaliation since at least 1993, denied him equal pay on the basis of race and retaliation since November 1991, and provided a hostile work environment. The biggest difference between the claims asserted in the Morgan class action and this suit is Taylor's addition of the retaliation claims, which allegedly are related to his participation in Morgan.

UPS's structure in the United States consists of various "Regions" across the country, which are then subdivided into "Districts." Each District contains several "Divisions," which in turn contain "Centers" that are responsible for delivery and pickup of packages. Center Managers report to Division Managers, who report to the District Manager in their district. UPS maintains approximately 32 Centers in the Gulf South District, which includes Louisiana.

During Taylor's tenure at UPS he worked in a variety of positions within the Gulf South District. In June 1992, he was promoted to Center Manager, which calls for Salary Grade 16 on the UPS pay scale. Taylor provided summary judgment evidence through his expert, Dr. J. Rody Borg, that he was paid less than other Grade 16 white managers as a group, less than other black managers

as a group, and, most significantly, less than two specific white managers with like tenure and evaluations.

Furthermore, Taylor claims that he was denied promotion from Center Manager to Division Manager, a Grade 18 position. To be promoted to the position of Division Manager, a Center Manager must be placed on the UPS Gulf South District's "Ready Now" list. Decisions about whom to place on the "Ready Now" list are made at the discretion of UPS managers at the Gulf South District. Ultimately, Taylor attributes his comparatively lower pay and his denial of a Division Manager promotion to race discrimination and retaliation by UPS for his testimony in the Morgan class action.

In April 2005, UPS filed its first motion for summary judgment, seeking to dismiss all of Taylor's claims. In early 2006, the district court denied the motion with respect to Taylor's discriminatory and retaliatory pay disparity claims but granted the motion as to his promotion and hostile work environment claims. Taylor v. United Parcel Service, Inc., 421 F. Supp. 2d 946, 956 (W.D. La. 2006). A central part of the court's analysis concerned the statutes of limitations for the various claims and the extent to which the Morgan class action tolled the statute of limitations on those claims. Id. at 950–51. The district court found that tolling ceased on Taylor's claims in 2000, when the Eastern District of Missouri dismissed the Morgan class claims, rather than in 2004, when the Eighth Circuit affirmed that dismissal. Id. On that basis, taking into account the ordinary one-year limitation period for promotion claims under 42 U.S.C. § 1981 and state law, as well as the applicable limitation period for his Title VII claims, the district court dismissed all of Taylor's promotion claims arising before March 2002 (one year prior to filing this suit) without further discussion. Id.

The district court next considered the three remaining promotion claims, those that arose on or after March 18, 2002. Applying the modified McDonnell

3

Douglas framework,[1] the district court found that Taylor had failed to make out a prima facie case of discrimination with respect to two of those promotion claims because the employees promoted in Taylor's place were also African-American. Id. at 951–52. As to the third promotion, the district court found that Taylor had failed to rebut UPS's explanation that he was not promoted because he was not on the "Ready Now" list for promotion and thus had failed to raise a genuine issue of material fact regarding discrimination. Id. at 952–53. The district court thus dismissed all of Taylor's discriminatory promotion claims.

For the retaliatory promotion claims, the district court found that Taylor had failed to establish any causal link between his alleged protected activity (such as his involvement in the Morgan class action in 1999 and 2000) and UPS's failure to promote him in the period from March 2002 to the filing of this suit. Id. at 953–54. Specifically, the court found that Taylor presented no summary judgment evidence that the relevant UPS decision makers knew of his involvement with the Morgan class action, and Taylor otherwise presented no evidence of causation. Id. at 954. The district court found that the time between his involvement in the Morgan action and his claims for the period beginning March 2002 was simply too long to independently support an inference of causation. Id. Accordingly, the district court dismissed all of his 2002–2003 retaliatory failure to promote claims.

Finally, the district court found that Taylor had failed to present proper evidence to support a hostile work environment claim, so it dismissed that claim as well. Id. at 955–56. In light of those dismissals, only the discriminatory and retaliatory pay claims remained. As explained in Part IV-A of this opinion, given the four-year statute of limitations applicable to those claims, the district court

---

[1] See Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (discussing the framework, so named because of its origin in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in the context of an age discrimination claim).

found that they had been tolled during the entire Morgan class action and so were potentially viable back to March 1993. Id. at 954–55. In its 2006 ruling, the district court found that genuine issues of material fact remained as to the pay claims and denied UPS's motion for summary judgment with respect to them. Id. at 955.

UPS filed a second motion for summary judgment in February 2007, seeking the dismissal of the pay claims. In granting this motion, the district court concluded that Taylor had failed to raise a genuine issue of material fact regarding discriminatory or retaliatory pay disparity because the only evidence he presented to prove his claim was the testimony of his proffered expert, Dr. Borg. The district court characterized Dr. Borg's testimony as "based solely" on statistics and regression analysis, which it found insufficient. Taylor v. United Parcel Service, Inc., No. 03-516, 2007 WL 4180473, at *2 (W.D. La. Nov. 21, 2007). Accordingly, the district court granted UPS's motion and dismissed Taylor's remaining claims.

On appeal, Taylor challenges the district court's orders granting summary judgment with respect to his promotion and pay disparity claims; he does not challenge the dismissal of his hostile work environment claim.

## II. JURISDICTION

The district court had federal question jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over the district court's final judgment dismissing all of Taylor's claims pursuant to 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

"We review the district court's rulings on summary judgment motions de novo, employing the same analysis as the district court." Allstate Ins. Co. v. Disability Servs. of the Southwest Inc., 400 F.3d 260, 262–63 (5th Cir. 2005).

Pursuant to FED. R. CIV. P. 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

## IV. STATUTES OF LIMITATIONS AND TOLLING

### A. The Consequences of the Tolling Period Selection

The most important question before us is the extent to which the Morgan class action tolled the statute of limitations governing Taylor's claims. The district court correctly determined that Taylor's non-Title VII promotion claims are subject to a one-year statute of limitations, Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985), LA. CIV. CODE ANN. art. 3492, while his non-Title VII pay disparity claims are subject to a four-year statute of limitations, White v. BFI Waste Services, LLC, 375 F.3d 288, 291–92 (4th Cir. 2004), 28 U.S.C. § 1658. Thus, those are the key periods we examine.

UPS argues, as the district court found, that Taylor's claims were tolled only from June 17, 1994 (when the Morgan suit was filed) to June 26, 2000, the date the Eastern District of Missouri dismissed the class claims in Morgan. Taylor argues that his claims were tolled from June 17, 1994 to August 30, 2004, the date the Eighth Circuit affirmed that dismissal. Because Taylor did not file his individual suit until 2003, the tolling period choice controls the timeliness of Taylor's suit on a number of his claims.

For the promotion claims (governed by a one-year statute of limitations), if we accept UPS's argument and permit tolling only from 1994 to 2000, the statute of limitations for all claims during that period expired, at the latest, in 2001, one year after tolling ended. If UPS and the district court are correct, Taylor's 2003 suit was only timely to assert his claims for discrimination that occurred within the one-year period prior to filing suit, from March 2002

forward. On the other hand, if, as Taylor contends, tolling is permitted until 2004, when the Eighth Circuit affirmed the Morgan dismissal, then Taylor's 2003 suit was filed within the tolling period and his suit may timely assert promotion claims from as early as 1993, one year prior to the filing of the Morgan class action. Because Taylor's suit actually does assert promotion claims dating back to the mid-1990s, the choice of tolling periods is crucial to his promotion claims.

Taylor's pay disparity claims are subject to a four-year statute of limitations, and Taylor's 2003 suit was filed within four years of the Morgan district court's 2000 dismissal. Thus, whether tolling ended in 2000 or in 2004, Taylor may assert claims predating the filing of Morgan in 1994. Based on the 2000 date, the district court found that Taylor could assert pay claims arising on or after March 9, 1993. 421 F. Supp. 2d at 954–55. To determine the earliest claims Taylor could timely assert, we count back four years from 1994, when the Morgan class action was filed. Thus, in theory, Taylor could assert claims dating back to 1990. Although Taylor's complaint asserts pay disparity claims from November 1991, Taylor concedes on appeal that his pay claims are only from 1993 through 2004. Thus, we consider only Taylor's pay disparity claims from 1993 forward.

## B. Selection of the Tolling Period

Having determined the consequences of the tolling period selections, we turn now to the proper selection of that period. The primary issue presented is whether the Morgan class action tolled prescription until 2000, when the district court dismissed the class claims on the merits, or 2004, when the Eighth Circuit affirmed the dismissal. We start from the bedrock premise that a party who sues on a cause of action tolls the statute of limitations during the entire prosecution of the action, including the prosecution of any appeal; otherwise, a

plaintiff could not count on an appeal to protect his or her rights.[2] UPS does not argue that the claims of an individual plaintiff, or a named plaintiff in a class action, are not tolled during the pendency of an appeal.

Furthermore, the Supreme Court has made it clear that members of a certified class are to be treated essentially as named plaintiffs—and are bound by the resulting judgment—when they are adequately represented by the class representative and the other requirements of FED. R. CIV. P. 23 are met. See, e.g., Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 395 (1996).

> The purpose of Rule 23 would be subverted by requiring a class member who learns of a pending suit involving a class of which he is a part to monitor that litigation to make certain that his interests are being protected; this is not his responsibility—it is the responsibility of the class representative to protect the interests of all class members.

Gonzales v. Cassidy, 474 F.2d 67, 76 (5th Cir. 1973). That responsibility does not end at the district court because "[i]t is axiomatic that an appeal is a significant element in the judicial process." Id.[3]

The same result does not flow for members of a putative class that has not been certified. As indicated above, the district court found that the certified class action in Morgan only tolled the statute of limitations until 2000, when the Eastern District of Missouri dismissed the class claims in Morgan, rather than

---

[2] Cf. United States v. Maxwell, 330 F. Supp. 1253, 1255 (N.D. Tex. 1971) (recognizing that a statute of limitations pertaining to suits by the Commissioner of Internal Revenue was tolled during appeal because, "[i]f the statute were not tolled during appeal, the Commissioner would be forced to seek immediate collection of deficiency judgments, whether or not they were being contested.").

[3] Indeed, we determined in Gonzales that a class representative's failure to appeal a district court judgment adverse to the class rendered the class representation inadequate under Rule 23(a)(4), and the class members were not bound by the judgment. Id. Of course, it has never been argued that the Morgan class was inadequately represented or was otherwise deficient, and the Morgan class representatives in fact appealed the dismissal of the class claims on the merits. Morgan, 380 F.3d at 461. Thus, we must assume that the Morgan class representatives continued to protect the interests of the certified class on appeal.

in 2004, when the Eighth Circuit affirmed the dismissal. As we explain below, we are satisfied the district court erred in reaching this conclusion because it did not recognize the distinction between putative members of an uncertified class and members of a certified class in determining the application of tolling principles.

We begin with American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983), the two most prominent Supreme Court cases concerning tolling in connection with the denial of class certification. In American Pipe, the State of Utah timely filed a civil action against American Pipe, seeking class action status and describing the putative class; the suit was filed 11 days before the applicable statute of limitations ran. 414 U.S. at 542. The district court eventually determined that although the action met the Rule 23(a)(2)–(4) factors, it failed to meet Rule 23(a)(1)'s numerosity requirement; accordingly, the court entered an order denying class certification under Rule 23(c)(1). Id. at 543. Eight days after entry of the order, more than 60 former putative class members filed motions to intervene in the action as plaintiffs. Id. at 544. The district court denied their motions, reasoning that the filing of the purported class action had not tolled the statute of limitations with respect to putative class members because the class was never certified. Id. After the Ninth Circuit affirmed, the Supreme Court granted certiorari.

In a matter of first impression, the Supreme Court closely examined the text and history of Rule 23, id. at 545–52, and determined that, "consistent with federal class action procedure . . . commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Id. at 554. Applying this rule, the Court explained that the one-year statute of limitations period, which had been tolled 11 days prior to its

expiration by the filing of the suit, resumed when the district court denied certification. Id. at 561. Because the motions to intervene were filed eight days after entry of the denial order, they were timely, and the former putative class members could intervene to assert their still-viable rights. Id.

In Crown, Cork & Seal, the respondent, Parker, was a putative class member in an employment discrimination class action, which was filed in September 1978. 462 U.S. at 347. At the same time, Parker was pursuing an EEOC charge, and the EEOC sent him a notice of his right to sue on November 9, 1978, giving him 90 days to file suit. Id. at 347–48. Thus, he received the notice while he was a member of a putative class, but before the district court had made a class certification decision.

In May 1979, the named plaintiffs in the purported class action filed a motion for class certification, which the court denied in September 1980 for failure to meet the Rule 23 requirements of typicality, adequate representation, and numerosity; that action continued as an action with only the named plaintiffs as parties. Id. Parker did not intervene in the action but instead filed his own action, within 90 days after the denial of class certification but nearly two years after receiving the EEOC notice. Id. at 348.

The only issue presented on appeal was whether the class action tolled the statute of limitations for Parker even though he filed an individual suit instead of intervening in the existing suit after class certification had been denied.[4] The Supreme Court held that "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class, not just as to intervenors." Id. at 350 (internal quotation marks and citation omitted). Parker's entire 90-day limitation period (triggered by the EEOC notice) was tolled by the purported class action because he received the notice while the action was pending. Id. at

---

[4] Following American Pipe, some intermediate courts had found that there was a distinction between intervenors and non-intervenors. Id. at 348–49.

354. Tolling did not resume until class certification was denied, and Parker's individual suit was filed within 90 days of that denial; thus, it was timely. Id.

Therefore, it is clear from these cases that if the district court denies class certification under Rule 23, tolling of the statute of limitations ends. Our opinion in Calderon v. Presidio Valley Farmers Assoc., 863 F.2d 384 (5th Cir. 1989), makes it clear that an appeal of the denial of class certification does not extend the tolling period. There, the district court had previously denied class certification, and when the plaintiffs' appeal of that ruling reached us, we remanded the case and "specifically invited the district court to reconsider" its denial of class certification. 863 F.2d at 389. In the meantime, after the denial of certification but before the appeal was decided, the two-year statute of limitations ran. Id. at 390.

On remand, the district court certified a class that included former putative class members. On appeal the second time, we determined that tolling had ended for the former putative class members' claims when the district court initially denied class certification. Id. Because those claimants had failed to protect their rights by intervening or filing suit after the denial of certification, the two-year statute of limitations expired in the interim, and the district court's new certification order could not revive those time-barred claims. Id. Calderon therefore establishes that the denial of certification ends the tolling period without regard to any appeal from that decision. Calderon does not control the instant case, however, because it did not involve the merits dismissal of the claims of a certified class, as this case does.

Fortunately, the Third Circuit in Edwards v. Boeing Vertol Co., 717 F.2d 761 (3d Cir. 1983), vacated on other grounds, 468 U.S. 1201 (1984), considered a case with facts identical in principle to today's case. The appellant, Edwards, was an employee of the defendant, Boeing Vertol. 717 F.2d at 762. He was also a class member (but not a named plaintiff) in a class action, Croker v. Boeing Co.

11

(Vertol Division), filed September 2, 1971, asserting employment discrimination claims against Boeing Vertol arising on or after September 2, 1965.  Id.  The Croker district court certified the class on August 4, 1972, but on June 20, 1977, following the liability portion of a bifurcated trial, the district court dismissed the claims of non-named class members, including Edwards, on the merits. Croker v. Boeing Co. (Vertol Division), 437 F. Supp 1138 (E.D. Pa. 1977). Critically, however, the Croker district court—as in the Morgan class action—did not deny class certification.  See id.  The Third Circuit, sitting en banc, affirmed the dismissal of the class claims on September 30, 1981.  See Croker v. Boeing Co. (Vertol Div.), 662 F.2d 975, 990–98 (3d Cir. 1981) (en banc).[5]

While the class action was pending, Edwards filed an individual EEOC charge on November 21, 1973, received a notice of his right to sue in 1980, and filed an individual suit in December 1980.  Edwards, 717 F.2d at 762–63. Edwards argued that his claims, arising as early as September 2, 1965, had been tolled by the Croker action, but the district court refused to consider any claims arising before May 25, 1973, 180 days prior to the filing of his 1973 EEOC charge.  Id. at 763–64.[6]

On appeal, the Third Circuit found that the Croker action had tolled the running of the statute of limitations on Edwards's claims until the merits dismissal was affirmed on appeal.  Although American Pipe and Crown, Cork & Seal were not controlling, the court relied on the principles established in those cases to determine when tolling ends for the claims of a certified class member:

---

[5] The court did not address the individual claims of non-named class members (including Edwards) because they had not intervened in the suit to assert their individual claims.  662 F.2d at 997–98.  Consequently, their only claims properly before the court were the class claims.  Id.

[6] The court erroneously lists the date once as May 25, 1983, id. at 764, but the correct year is clearly 1973.

> Reliance on the pendency of a certified class action is more reasonable than the reliance on an uncertified class action which those cases approve. The certification of the class should discourage, rather than encourage, the proliferation of filings of individual actions. . . . Consistency with the policies reiterated in Crown, Cork & Seal requires that the tolling of the statute of limitations continue until a final adverse determination of class claims. That occurred in this case on September 30, 1981.

Id. at 766 (footnote omitted).

In concluding that tolling continued until September 30, 1981, when the district court's judgment was affirmed on appeal, the Edwards court followed the general rule that tolling continues until the judgment in the case becomes final or until "a final adverse determination" is made. If the judgment is appealed, this occurs when the appeal is decided; if no appeal is taken, the judgment becomes final when the time for appeal ends. Edwards, as a member of a certified class, was given the same rights as a named plaintiff with respect to tolling: "Since Edwards filed his complaint before the Croker case was finally determined in favor of Boeing Vertol, he should be able to prove any acts of discrimination against him which he could have proved had he been a named party in that action." Id.

The result reached by Edwards is not inconsistent with American Pipe, Crown, Cork & Seal, or Calderon. In those cases, the district court's refusal to certify the class was tantamount to a declaration that only the named plaintiffs were parties to the suit. Thus, those cases logically concluded that after the district court's denial of certification, the putative class members had no reason to assume that their rights were being protected. Stated differently, they were notified that they were no longer parties to the suit and they should have realized that they were obliged to file individual suits or intervene in the class action. This conclusion follows from the limited inquiry under Rule 23 regarding class certification:

The analysis under Rule 23 must focus on the requirements of the rule, and if findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental. The findings made for resolving a class action certification motion serve the court only in its determination of whether the requirements of Rule 23 have been demonstrated.

Bell v. Ascendant Solutions, Inc., 422 F.3d 307, 312 (5th Cir. 2005).

When a class is certified, however, the district court has necessarily determined that all of the Rule 23 factors are met. From that point forward, unless the district court later decertifies the class for failure to satisfy the Rule 23 factors, members of the certified class may continue to rely on the class representative to protect their interests throughout the entire prosecution of the suit, including appeal. A contrary rule would require certified class members to immediately intervene or file individual suits in the event of a merits dismissal of the class action in the district court. Such a rule would not work to prevent "needless multiplicity of actions," Crown, Cork & Seal, 462 U.S. at 351, and would ignore the intended benefit of certification—efficient representation of a class of claimants. See Edwards, 717 F.2d at 766.

Applying the above principles to the case before us, we find a clear answer to the tolling question. The Morgan district court granted conditional certification on October 30, 1996 and modified the classes on April 25, 1997, all under Rule 23; the court never denied certification. See Morgan, 143 F. Supp. 2d at 1145. The court's June 26, 2000 order granting summary judgment was on the merits and did not consider certification under Rule 23, although UPS had moved, in the alternative, for decertification of the class.[7] Id. at 1147–52. On appeal, the Eighth Circuit's August 30, 2004 opinion addressed the merits

---

[7] The Morgan district court denied the motion to decertify as moot, along with other pending motions. 143 F. Supp. 2d at 1154.

of the class claims and did not mention the Rule 23 factors. See Morgan, 380 F.3d 459.

In sum, because the Morgan district court did not deny class certification, American Pipe, Crown, Cork & Seal, and Calderon are inapposite. Because Taylor remained a member of a certified class while Morgan was on appeal, he was entitled to assume that the class representatives continued to represent him and protect his interests in appealing the order dismissing the class claims on the merits. This is consistent with the general rule that all members of a certified class enjoy the same rights as individually named plaintiffs in the suit. Thus, we conclude that Taylor's claims were tolled until August 30, 2004, when the Eighth Circuit affirmed the district court's order in Morgan. This action by the Court of Appeals was the final adverse determination of the claims of the certified class of which Taylor was a member.

## C. Title VII Claims

The district court found that Taylor was required to file any Title VII charges of discriminatory conduct within 300 days of the alleged unlawful conduct. Taylor, 421 F. Supp. 2d at 951 (citing 42 U.S.C. § 2000e-5(e)). Taylor filed his EEOC charge on January 16, 2003, so the district court, calculating 300 days prior to the EEOC charge, found that all of Taylor's Title VII claims arising prior to March 20, 2002 were time-barred. Id. However, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). In light of our determination that Taylor's other claims were timely, the district court should examine on remand whether Taylor's Title VII claims were also timely.

## D. Conclusion

Because Taylor's claims were tolled until August 30, 2004, the instant suit, filed March 19, 2003, was commenced within the tolling period. Accordingly, as explained above, Taylor was entitled to assert promotion claims for events that occurred up to one year prior to June 17, 1994 and pay claims for events that occurred up to four years prior to that date. Taylor asserted promotion claims arising as early as 1993, and the district court erred in refusing to consider any of those claims arising prior to March 18, 2002. Consequently, we vacate that portion of the district court's judgment dismissing Taylor's promotion claims arising before March 18, 2002. As to Taylor's pay disparity claims, the timeliness of those claims is unaffected by the tolling issue discussed above. The district court correctly found that his pay claims from 1993 through 2004 were timely, and Taylor now concedes those are the only pay claims he has asserted.

## V. PROMOTION CLAIMS

In dismissing Taylor's pre-2002 promotion claims, the district court examined only a small sample of the claims asserted in the complaint. Although it might be possible for us to examine Taylor's claims that arose from March 2002 to March 2003 in isolation, it would be imprudent to do so. We cannot say how Taylor's claims arising during the preceding decade might have affected the resolution of his claims arising during the 2002–2003 period, had they been examined together. For instance, for the retaliatory promotion claims, the district court relied on the elapse of time between Taylor's participation in the Morgan class action in 2000 and his promotion claims for the 2002–2003 period in finding no causal relation between the protected activity and the promotion decisions. Taylor, 421 F. Supp. 2d at 954. Because the district court had already dismissed all of Taylor's pre-2002 claims, it did not discuss any promotion claims that may have arisen soon after Taylor's participation in Morgan. This is not to

suggest that those claims would prevail; it only illustrates how the district court's dismissal of Taylor's pre-2002 claims muddles the record before us.

Under these circumstances, we vacate the district court's dismissal of Taylor's 2002–2003 discriminatory and retaliatory promotion claims and remand those claims for consideration in the context of Taylor's pre-2002 claims. We express no opinion on the outcome.

## VI. PAY CLAIMS

We next consider the merits of Taylor's arguments on his discriminatory and retaliatory pay disparity claims because the district court apparently considered all of the relevant claims—those from 1993 to 2004—in its September 13, 2007 ruling and November 21, 2007 supplemental ruling dismissing them.

### A. Discriminatory Pay Disparity

To make out a prima facie case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility. Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984). Pursuant to the McDonnell Douglas framework, "[o]nce shown, a plaintiff's prima facie case creates an inference of . . . discrimination, which the employer is required to rebut with a legitimate non-discriminatory reason" for the pay disparity. Ross v. University of Texas at San Antonio, 139 F.3d 521, 525 (5th Cir. 1998) (concerning age discrimination). If the employer provides such a reason, the burden shifts back to the plaintiff to establish that the employer's stated reason is pretextual. Id. "To avoid summary judgment, an age discrimination plaintiff must present evidence that both (1) rebuts the employer's non-discriminatory reason, and (2) creates an inference that age was a determinative factor in the challenged employment decision." Id.

An individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are "nearly identical" to those of a better-paid employee who is not a member of the protected class. See Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991). In making this showing, an individual plaintiff pursuing an individual claim may not rely on the type of pattern-or-practice evidence that is acceptable in class action suits alleging similar conduct, such as general statistical evidence. See Thompson v. Leland Police Dep't, 633 F.2d 1111, 1114 (5th Cir. 1980) ("[S]tatistical evidence alone does not establish or necessarily imply racially discriminatory practices."). Therefore, Taylor cannot rely on general statistical evidence to establish a pattern of discrimination.

Instead, he must present prima facie evidence that his pay was lower than specific employees who are not members of the protected class. Taylor argues that he actually presented such evidence. He relies on evidence included in Dr. Borg's report, covering the period from March 9, 1993 through Taylor's retirement on April 1, 2004 and reporting that Taylor was paid less than two specific white Center Managers in the Gulf South District, identified by the last four digits of their Social Security Numbers.

The district court characterized Dr. Borg's analysis as being "based solely" on statistics and regression analysis and found it insufficient. Taylor, 2007 WL 4180473, at *2 (emphasis added). Although the majority of Dr. Borg's report is indeed based solely on statistics and regression analysis, the direct comparison at issue here is not. Dr. Borg's analysis compares Taylor to two specific, apparently similarly situated white employees—those with similar evaluations and tenures—over the course of their employment at UPS. That comparison shows Taylor was paid 5.75% less than one of them and slightly over 17% less than the other. Thus, the district court erred in refusing to consider that portion of Dr. Borg's report.

The district court further stated, "Even assuming that Dr. Borg's statistically-based opinion alone could create a prima facie case of discrimination or retaliation, it would not be sufficient to rebut UPS' legitimate, non-discriminatory business reasons for the differences in pay." Id. The district court, however, provides us with little or no analysis or discussion of UPS's proffered legitimate, nondiscriminatory reason.

It is clear that Dr. Borg's specific comparison showed that Taylor was a member of a protected class and that he was paid less than a similarly situated non-member of his class; thus, the comparison makes out a prima facie case of race discrimination. Uviedo, 738 F.2d at 1431. The district court erred in finding that Dr. Borg's report was based solely on statistics and regression analysis and that the comparison is insufficient to make out a prima face case of discriminatory pay disparity. We must therefore vacate the district court's dismissal of Taylor's discriminatory pay claims.

## B.  Retaliatory Pay Disparity

The McDonnell Douglas framework also applies to Taylor's retaliatory pay disparity claim. He must show "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996) (citing McMillan v. Rust College, Inc., 710 F.2d 1112, 1116 (5th Cir. 1983)).

The same analysis applies to this retaliation claim as we discussed in the connection with the discriminatory pay claim. The district court found that Taylor had failed to make out a prima facie case of general pay disparity and did not consider the evidence discussed above included in Dr. Borg's report. Therefore, we must vacate the dismissal of this claim and remand for further proceedings.

## CONCLUSION

For the reasons stated above, the district court's judgment is VACATED, and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.