Veronica JONES, Plaintiff,

v.

**CHEVRON U.S.A., INC., Defendant.**

**Civil Action No. H–11–0851.**

United States District Court, S.D. Texas, Houston Division.

Feb. 12, 2013.

Thomas E. Marshall, Attorney at Law, Rochester, MI, for Plaintiff.

Martin A. Wickliff, Jr., Cozen O'Connor, Norasha Lynn Williams, Cozen O'Connor PC, Houston, TX, for Defendant.

### MEMORANDUM AND ORDER

STEPHEN WM. SMITH, United States Magistrate Judge.

This wage discrimination case is before the court on the parties' cross-motions for summary judgment (Dkts. 40, 42). Having considered the parties' submissions and argument at a hearing on February 1, 2013, the motions are denied.[1]

### Background

In February 2006, Veronica Jones, an African American, began working for Chevron Business and Real Estate Services (CBRES) as a contract employee. Four months later she obtained a regular full-time position within CBRES as an administrative specialist at pay grade 14 with an annual salary of $44,500. In May 2008, Jones was promoted to the position of HES specialist, and assigned pay grade 18 with a salary of $56,000. These pay grade and salary decisions were not made by CBRES, but rather by a Chevron corporate human resources group known as "Total Remuneration." In September 2009, Jones filed an EEOC charge claiming, among other things, that she was paid less than similarly situated non-minority employees. Jones received subsequent pay raises before her job was eliminated in December 2011.

Jones filed this suit in March 2011 alleging a variety of claims, including wage discrimination on the basis of her race in violation of Title VII. At this point Jones has withdrawn or abandoned all claims other than her Title VII unequal pay claim.[2] Both sides have filed summary judgment motions. We turn first to Chevron's motion.

1. Defendant's objections to plaintiff's summary judgment evidence (Dkt. 51) are overruled.

2. Jones's counsel withdrew her claim for retaliation on the record in open court on November 1, 2012. Jones's complaint references 42 U.S.C. § 1981 and the Texas Labor Code, but her summary judgment briefing addresses only Title VII. See Dkt. 42 at 2; Dkt. 51 at 3. Jones's summary judgment briefing fails to address any claim that she was discriminated against by being given an unequal work load. See Dkt. 43 at 1; Dkt. 55, at 20. Jones's counsel confirmed on the record on February 1, 2013 that Jones has withdrawn all claims other than Title VII discrimination based on unequal pay. All other claims are dismissed.

### *Analysis*

#### 1. Defendant's Motion for Summary Judgment

Chevron bases its summary judgment motion on the familiar *McDonnell Douglas* framework, arguing that Jones can not make out a prima facie case, that Chevron had legitimate non-discriminatory reasons for its actions, and that Jones cannot show those reasons to be a pretext for unlawful discrimination (Dkt. 40). In this court's experience the utility of this framework is often exaggerated, especially in cases "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In this instance, however, that framework is dispositive.

#### A. Plaintiff's *Prima Facie* Case

To establish a prima facie case of racially discriminatory compensation under Title VII, Jones must show that she was paid less than a member of a different race was paid for work requiring "substantially the same responsibility." *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 522 (5th Cir.2008).[3] Even though *McDonnell Douglas* cautions that elements of a prima facie case may vary depending upon the factual situation,[4] this description of the prima facie standard for Title VII pay disparity cases has been consistently followed by the Fifth Circuit over the years. *See, e.g., Pittman v. Hattiesburg Munici-*

*pal Separate School Dist.*, 644 F.2d 1071, 1074 (5th Cir.1981); *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).

Chevron argues, citing *Taylor*, that Jones cannot establish a prima facie case of discrimination because she and her comparators did not work under "nearly identical circumstances." But this is a misreading of *Taylor*, which does not use this phrase in discussing the prima facie case, but rather when describing the plaintiff's burden to show pretext *after* the employer comes forward with its legitimate non-discriminatory reason for the pay disparity. 554 F.3d at 522–23. This was how the phrase was employed in *Little v. Republic Refining Co.*, 924 F.2d 93, 96–97 (5th Cir. 1991), the lone case cited by *Taylor* in support of the "nearly identical" standard. In *Little*, an age discrimination plaintiff unsuccessfully attempted to show that the employer's stated reasons for his discharge were pretextual by pointing to disparate treatment of a younger employee under circumstances that were not nearly identical. There is no reason to believe that *Taylor's* reference to "nearly identical circumstances" was intended to silently overturn the quarter-century's worth of prima facie case precedent represented by *Uviedo* and *Pittman.*

Jones argues that she has identified at least four non-minority comparators who were paid more for work requiring substantially the same responsibility. In order to prove a prima facie case, which is commonly acknowledged to be an extremely light burden,[5] the plaintiff need estab-

---

**3.** *Taylor* and *Uviedo* unhelpfully add an additional element, that plaintiff prove she is a member of a "protected class." Given that Title VII protects members of all races, whether white or nonwhite, this "requirement" will always be met by any plaintiff who, like Jones, happens to be human. *See McDonald v. Santa Fe Trail Transp. Co.*, 427

U.S. 273, 278–79, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

**4.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**5.** *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

lish only a single instance of disparate pay. *Pittman*, 644 F.2d at 1074 ("The usual unequal pay case involves two employees, one black and one white, employed at the same time doing substantially the same work."). The court will thus focus on the comparator (Aytes) whose circumstances appear most similar to Jones.

It is undisputed that Aytes was promoted to the HES specialist position in June 2008, and assigned pay grade 19 with a salary of $61,000. This was one pay grade higher and $5000 more than Jones, who had been promoted to the same position one month earlier. Even though Jones later received periodic annual raises, the pay disparity did not disappear, but actually widened—by January 2010, Jones' salary was $59,100, while Aytes' had jumped to $65,200.

Chevron argues that, despite sharing the same job title of HES specialist, Aytes and Jones performed substantially different work. Chevron has submitted the testimony of an HR representative that Aytes "is responsible for safety processes, including providing HES support and guidance to operations for assigned safety processes, overseeing and managing the implementation and deployment of elements of the CBRES safety programs, and conducting routine safety training. This is unlike and distinguishable from Jones's HES Specialist position, because [Aytes] is required to use and apply HES principles and techniques to oversee and manage safety processes and programs in addition to conducting trainings."[6] Chevron has presented no evidence from Aytes herself or her supervisor describing her job content.

Jones has submitted an affidavit stating that her core job duties and responsibilities as an HES Specialist were:

- providing HES guidance to CBRES personnel concerning Incident Investigation and Reporting;
- assisting with OE reviews, field evaluations, reviews, and investigations;
- reviewing, identifying needs, and providing feedback on existing HES procedures and assisting in procedure development;
- incident investigation and reporting;
- coordinating and delivering training to CBRES Managers and Supervisors for various groups throughout CBRES;
- job site safety inspections and making improvement recommendations;
- site OSHA reporting;
- OE compliance;
- supporting CBRES LT Sponsors and Contract Owners;
- ensuring ISN database contains current contractor safety data;
- supporting and maintaining relationships with Contractor Management and site based employees;
- assisting Contract Owner, Project Manager in developing continual Improvement Plans, to initiate a Mitigation Plan (if necessary) based on contractor performance;
- assisting in coordinating annual CHESM meetings;
- providing functional guidance to Embedded Safety Specialists, Regional CHESM Specialist, and Regional OE Coordinators;
- providing guidance in Incident Investigation & Reporting & OELT Incident Report Preparation;
- coordinates communications with CBRES & communication groups;
- assisting in HES reviews.[7]

---

**6.** Affidavit of Brenna Johnson (Dkt. 40–3), ¶ 18.

**7.** Affidavit of Veronica Jones (Dkt. 55–1), ¶ 3.

Notwithstanding Chevron's claim to the contrary, Jones's list of job responsibilities might reasonably be construed as "applying HES principles and techniques to oversee and manage safety processes and programs." A reasonable jury could thus conclude that Jones and Aytes were doing work requiring substantially the same responsibility. Consequently, Chevron has failed to carry its summary judgment burden of showing that Jones cannot establish a prima facie case of wage discrimination based on this comparator.[8]

## B. Chevron's Burden of Production

Under the *McDonnell Douglas* framework, a plaintiff's prima facie case creates an inference of discrimination, which shifts the burden to the employer to produce admissible evidence of its legitimate, nondiscriminatory reason for the pay disparity. *Taylor*, 554 F.3d at 522. Although its burden is light, the employer must articulate its nondiscriminatory reason with some specificity in order to afford the plaintiff "a full and fair opportunity to demonstrate pretext." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

According to Chevron's submissions, the pay grade and salary decisions regarding Jones and Aytes were not made by managers or supervisors within the organizational or business units where they worked, but rather by some unidentified person or persons within a corporate human resources department called Total Remuneration.[9] The summary judgment record contains no witness testimony from any Total Remuneration representative, whether by affidavit or deposition, regarding the pay disparity between Jones and Aytes. Nor is there any business record from Total Remuneration explaining how or why the salaries of these two employees were fixed at these differing amounts.

These deficiencies are not cured by Chevron's submission of the affidavit of Brenna Johnson, a human resources manager for CBRES, the business unit in which Jones and Aytes worked. As far as her affidavit discloses, Johnson did not work in Total Remuneration, and was not involved in the salary decisions for either Jones or Aytes. Her affidavit recites that "I have access to and review and analyze historical records and information regarding hiring and compensation decisions,"[10] but nowhere does she reference any Total Remuneration records concerning the specific compensation decisions at issue here. At one point Johnson does note that Aytes pay grade and salary levels were "based on the salary grades, ranges, and guidelines set by Total Remuneration,"[11] but those guidelines are not found in this record, nor are they explained in any meaningful way. Johnson's affidavit mentions "prior tenure, work experience, and the position requirements" as factors generally relevant to compensation, but we are left to guess what weight, if any, Total Remuneration actually gave to each of these factors in deciding how much to pay Jones and Aytes. Even if these criteria had been used, Jones and Aytes appear to be closely matched: Aytes had nearly one year more previous Chevron experience, but Jones had 17 months more administrative experience relevant to the job. How such minor differences in job history would cause Aytes to be assigned a higher pay

---

8. The court expresses no opinion whether a prima facie case could be established through the other comparators.

9. Johnson Aff. ¶ 7.

10. *Id.* ¶ 3.

11. *Id.* ¶ 18.

grade than Jones for similar work remains a mystery.

In any event, as the summary judgment record currently stands, Chevron's articulated reason is little more than a black box. The pay disparity between Jones and Aytes is attributed to "guidelines set by Total Remuneration," without any proof of what those guidelines are or how they were applied to these individuals. This is the sort of "nonspecific, content-less explanation" that the Fifth Circuit has found insufficient to satisfy an employer's burden of production. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir.2007) (unexplained low interview scores insufficient to meet employer's burden of production in response to prima facie case of sexually discriminatory failure to promote); *Patrick v. Ridge*, 394 F.3d 311, 316–17 (5th Cir.2004) (bare assertion that plaintiff was "not sufficiently suited" for the position held insufficient to satisfy employer's burden of production); *see also Lovell v. Covenant Homeland Sec. Solutions, Ltd.*, Civil Action No. G–07–0412, 2008 WL 5378066 (S.D.Tex. Dec. 23, 2008) (screening sheets containing only numeric scores without comments insufficient to meet defendant's burden of production). As in those cases, the employer's articulated reason here "is at least as consistent with discriminatory intent as it is with nondiscriminatory intent." *Patrick*, 394 F.3d at 317.

Because Chevron has failed to satisfy its burden of production, the court does not reach its argument that Jones cannot demonstrate pretext or otherwise show that her compensation was actually based on race discrimination. *See Alvarado*, 492 F.3d at 618. Jones has raised a genuine issue of material fact on her prima facie case of wage discrimination, and therefore Chevron's motion for summary judgment is denied.

### 2. Plaintiff's Motion for Summary Judgment

Jones has filed a summary judgment motion of her own, claiming that Chevron has failed to articulate legitimate reasons for its actions sufficient to rebut her prima facie case. (Dkt. 42). As explained above, Jones has presented enough evidence to raise a jury issue on whether she was paid less than a member of a different race for work requiring substantially the same responsibility. However, viewing the evidence in the light most favorable to non-movant Chevron, a reasonable jury might well conclude that her work was not substantially the same as her non-minority comparators. Accordingly, Jones motion for summary judgment is likewise denied.

### 3. Conclusion and Order

As set forth above, the cross-motions for summary judgment (Dkts. 40, 42) are denied. This case remains set for trial on February 19, 2013. The parties' joint pretrial order is due February 15, 2013.