**Reversed and Remanded and Opinion filed April 30, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00034-CV

---

## A. REAGAN CLARK, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF LOIS CLARK, DECEASED, Appellant

### V.

## CONOCOPHILLIPS COMPANY, DCP MAINSTREAM LP, CONOCOPHILLIPS GAS COMPANY, AND DCP MARKETING, LLC, Appellees

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 99-DCV-107968B**

---

## O P I N I O N

Appellant A. Reagan Clark, individually and as the representative of the estate of his mother, Lois Clark, intervened in an ongoing lawsuit against appellees ConocoPhillips Company, DCP Midstream, LP, ConocoPhillips Gas Company, and DCP Midstream Marketing, LLC (collectively ConocoPhillips). Clark alleged that ConocoPhillips underpaid royalties it owed him and his mother pursuant to oil

and gas leases of their mineral rights in Fort Bend County. ConocoPhillips filed a motion for summary judgment asserting Clark's claims for underpayment of royalties were barred by the four-year statute of limitations. The trial court granted the motion.

On appeal, Clark asserts in a single issue that the trial court erred in granting ConocoPhillips's motion for summary judgment because the running of the limitations period was tolled so long as Clark's claims against ConocoPhillips were part of a previously filed class-action lawsuit alleging that ConocoPhillips had underpaid royalties. According to Clark, that tolling ended when the Supreme Court of Texas affirmed the decertification of his part of the class, and he timely intervened in the ongoing royalty underpayment lawsuit thereafter. Because we agree with Clark, we sustain his single issue on appeal, reverse the trial court's summary judgment, and remand this matter to the trial court for further proceedings in accordance with this opinion.

## BACKGROUND

The facts of this case are undisputed and the issue on appeal raises only legal questions. We therefore set out only a brief summary of the facts relevant to the resolution of this appeal.

### A.     The Clarks sign oil and gas leases.

In 1993, Clark and his mother, Lois Clark, each executed an oil and gas lease to Phillips Petroleum Company[1] of mineral interests located in Fort Bend County. ConocoPhillips commenced work on the first Clark well in 1996, the well started producing natural gas in late 1996, and the first sales were reported in January 1997. A second well began production in December 1998.

_____

[1] Phillips Petroleum Company merged with Conoco, Inc., and ConocoPhillips is the successor entity.

ConocoPhillips operated the Clark wells and paid royalties through December 2003.

The Clark Leases are two-pronged or hybrid leases because they provide for the payment of a one-sixth royalty on natural gas production based on either the proceeds of sales or the market value of the gas, depending on the point of sale.[2] The Clark Leases also contain express marketing provisions.[3]

### B. The *Bowden* class-action lawsuit is filed.

On February 16, 1999, a class-action lawsuit styled *Kathryn Aylor Bowden, et al. v. ConocoPhillips Company, et al.*, was filed in Fort Bend County, Texas. The *Bowden* plaintiffs alleged that ConocoPhillips had underpaid oil and gas royalties. The first class certification motion filed in the *Bowden* lawsuit sought to certify one class of underpaid royalty owners. The trial court certified a single class with three subclasses of plaintiffs. Clark contends that his claims and those of his mother were included in Subclass 1, which covered those royalty owners whose leases provided for payment on a proceeds or market value basis and whose gas had been sold by Phillips Petroleum Company to Phillips Gas Marketing Company. ConocoPhillips filed an interlocutory appeal contesting each certified

---

[2] The specific royalty clause provides:

As royalty, lessee covenants and agrees: . . . [t]o pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, [one-sixth] of the amount realized by lessee, computed at the mouth of the well, or (2) when used by said lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of [one-sixth] of such gas and casinghead gas.

[3] The express marketing provision provides:

Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee.

3

subclass.

**C.    The trial court's first class certification order is reversed.**

This Court reversed the trial court's certification of Subclass 1 because it included the claims of both market-value lessors and proceeds lessors. *See Phillips Petroleum Co. v. Bowden*, No. 14-00-01184-CV, 2001 WL 1249995, at *5 (Tex. App.—Houston [14th Dist.] Oct. 18, 2001, no pet.) (not designated for publication).  The case was remanded to the trial court without prejudice to further consideration of class certification. *Id.*

**D.    The trial court certifies the *Bowden* subclasses a second time.**

Following remand, the *Bowden* plaintiffs filed an amended motion for class certification asking the trial court to certify new subclasses.  The revised Subclass 1, which was certified by the trial court in June 2002, included lessors who were paid royalties based on proceeds of sales.[4]

**E.    The second class certification order is reversed.**

ConocoPhillips once again filed an interlocutory appeal of the trial court's class certification order.  On May 1, 2003, this Court issued its opinion and judgment reversing the class certification and remanding the case. *See Phillips Petroleum Co. v. Bowden*, 108 S.W.3d 385, 404 (Tex. App.—Houston [14th Dist.] 2003), *aff'd in part, rev'd in part*, 247 S.W.3d 690 (Tex. 2008).  The *Bowden* plaintiffs petitioned for review by the Supreme Court of Texas.  The supreme court granted the petition, heard oral arguments on December 1, 2004, and issued its opinion affirming the decertification of the revised Subclass 1 on February 15, 2008. *See Bowden*, 247 S.W.3d at 709.  The supreme court's mandate issued on

---

[4] The trial court again certified three subclasses.  It is undisputed however, that Clark's claims do not fit within either Subclass 2 or Subclass 3.  We therefore need not further address those subclasses.

4

March 28, 2008.

###### F.   Clark intervenes in the remanded *Bowden* lawsuit.

Following the decertification of revised Subclass 1, Clark intervened in the *Bowden* litigation on February 12, 2010.   Clark alleged that ConocoPhillips had underpaid royalties for gas produced from the Clark Leases from 1996 through November 2003.  The trial court severed Clark's claims into a separate case.

ConocoPhillips moved for summary judgment on two grounds: (1) Clark's lawsuit was barred because the statute of limitations had expired prior to his intervention in the *Bowden* litigation; and (2) the filing of the *Bowden* class-action suit did not toll the running of limitations because Clark's claims did not fit within Subclass 1.  The trial court granted the motion without specifying the grounds. This appeal followed.

ANALYSIS

In a single issue on appeal, Clark contends the trial court erred when it granted ConocoPhillips's motion for summary judgment because (1) the running of limitations on his claims against ConocoPhillips was tolled by the filing of the *Bowden* class-action lawsuit; and (2) he timely intervened once that tolling ended.

### I.   Standard of review

We review a trial court's order granting a traditional summary judgment de novo.  *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007).  To prevail on a traditional motion for summary judgment, a movant must prove entitlement to judgment as a matter of law on the issues set out in the motion.  Tex. R. Civ. P. 166a(c).  When the movant is a defendant, a trial court should grant summary judgment only if the defendant (1) negates at least one element of each of the plaintiff's causes of action, or (2) conclusively establishes each element of an

5

affirmative defense. *Primo v. Great Am. Ins. Co.*, No. 14-13-00492-CV, 2014 WL 7237330, at *3 (Tex. App.—Houston [14th Dist.] Dec. 18, 2014, no pet.).

A defendant moving for summary judgment on the affirmative defense of limitations must conclusively prove that defense as a matter of law. *Diaz v. Westphal*, 941 S.W.2d 96, 97–98 (Tex. 1997). To meet this summary judgment burden, the defendant must conclusively negate any relevant tolling doctrines the plaintiff raised in the trial court. *Id.* at 98.

## II. ConocoPhillips did not conclusively prove its affirmative defense of limitations.

ConocoPhillips asserted in its motion for summary judgment that Clark's claims were barred by the four-year statute of limitations because they concerned royalties paid between 1997 and 2003 but were not filed until February 2010. Clark responded that his suit was timely because the running of limitations was tolled during the pendency of the *Bowden* class-action suit filed in February 1999 and decertified in 2008. In addressing Clark's tolling argument, ConocoPhillips has not disputed (either in the trial court or on appeal) that the filing of a putative class-action suit in a Texas state court suspends the running of limitations for all purported members of the class. *See Grant v. Austin Bridge Co.*, 725 S.W.2d 366, 370 (Tex. App.—Houston [14th Dist.] 1987, no writ) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)). This doctrine, which was first recognized by federal courts applying similar federal class-action rules, is commonly known as *American Pipe* tolling.

Instead, ConocoPhillips notes that limitations remains tolled only "until class certification is denied," *id.*, and ConocoPhillips contends that any tolling was too short to render Clark's claims timely for two reasons. First, ConocoPhillips argues that tolling ceased when the trial court signed its second class certification

6

order in June 2002 because Clark's claims were not included in revised *Bowden* Subclass 1.[5]  Second, it argues that even if Clark's claims were part of revised Subclass 1, any tolling ceased when this Court reversed the certification of the revised subclass in May 2003, not when the supreme court affirmed that reversal and issued its mandate in 2008.  We address each argument in turn.

### A.   The tolling of limitations on Clark's claims did not cease in June 2002 because they fit within revised *Bowden* Subclass 1.

Revised *Bowden* Subclass 1 consisted of:

> Royalty owners who own or owned royalty interests under leases located in the state of Texas; where Phillips Petroleum Company is the lessee; under the terms of the lease, the payment of royalty of natural gas production is based on proceeds or amount realized; from which Phillips Petroleum produced natural gas (including natural gas liquids) that was directly sold or indirectly sold or transferred to Phillips Gas Marketing for marketing or resale; and during the period February 1995 through the present.

*Bowden*, 247 S.W.3d at 695.  ConocoPhillips contends it has conclusively shown that Clark's claims were not included in this subclass because the two-pronged Clark Leases based the payment of royalty on either proceeds or market value, and Clark's expert performed a damage calculation based on market value.  Clark responds that his claims challenge ConocoPhillips's payment of royalties under the proceeds prong of the Clark Leases based on the amounts realized from its sales to Phillips Gas Marketing, and therefore his claims for underpayment of royalties and breach of marketing obligations fall within revised Subclass 1 regardless of how

---

[5] ConocoPhillips did not argue in its motion for summary judgment, and has not argued on appeal, that *American Pipe* tolling ended when this Court issued its 2001 opinion rejecting the trial court's first class certification order.  *See Bowden*, 2001 WL 1249995, at *1; *cf. Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315, 320–23 (5th Cir. 2014) (holding *American Pipe* tolling continued when court of appeals reversed district court's class certification but remanded for further proceedings on certification as to subclass that included plaintiff).

his damages are calculated. We agree with Clark.

The supreme court observed that many of the leases in revised Subclass 1—including the leases of the named subclass representatives—contained two-prong gas royalty clauses identical to Clark's clause. *Id.* at 699 & n.2. The putative members of revised Subclass 1 alleged that ConocoPhillips failed to market the gas reasonably because it sold the gas to a wholly-owned subsidiary, Phillips Gas Marketing. *Id.* at 696, 699–700. In addition, ConocoPhillips recognized in its own motion for summary judgment that revised *Bowden* Subclass 1 "include[d] royalty owners with gas royalty clauses requiring Phillips to calculate the royalty as a percentage of the proceeds Phillips receives for selling the gas."

In his own petition, similarly, Clark alleged that ConocoPhillips breached the leases by underpaying royalties because ConocoPhillips based the royalty payments on the proceeds it received from sales to an affiliated company, Phillips Gas Marketing. In Clark's view, this action violated ConocoPhillips's duty to market the gas reasonably and diligently. Because Clark's claims fit within those alleged in revised Subclass 1, we hold that tolling continued as to those claims when revised Subclass 1 was certified. *See Bowden*, 247 S.W.3d at 696 ("The revised Subclass 1 only includes claims from royalty owners paid on an amount-realized or proceeds basis and who assert claims for breach of an implied covenant or express covenant to market.").

**B.** **Tolling ceased when the supreme court affirmed the reversal of revised Subclass 1**.

Having determined that *American Pipe* tolling continued to apply to Clark's claims following the second class certification, we next consider when "class certification [was] denied" and tolling came to an end. *Grant,* 725 S.W.2d at 370. ConocoPhillips contends that tolling ended when this Court issued its opinion and

8

judgment reversing the certification of revised Subclass 1 in May 2003. *See Bowden*, 108 S.W.3d at 404. We disagree.

ConocoPhillips brought an interlocutory appeal of the trial court's second class certification order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (West 2011). Our appellate rules provide that "[t]he appellate court's judgment on an appeal from an interlocutory order takes effect when the mandate is issued." Tex. R. App. P. 18.6. Our court never issued its mandate reversing the certification of revised Subclass 1 because the *Bowden* plaintiffs filed a petition for review that the supreme court granted. *See* Tex. R. App. P. 18.1(a). Thus, our May 2003 judgment reversing the certification of revised Subclass 1 did not take effect, and we hold class certification was not denied for tolling purposes at that time. Rather, class certification was denied and tolling ended when the supreme court affirmed this portion of our Court's judgment in 2008.[6]

In arguing against this result, ConocoPhillips cites federal appellate decisions holding that tolling ends when a federal district court denies class certification. In these decisions, courts reason that even if the named plaintiffs (as putative class representatives) seek permission to appeal that denial, the court of appeals might choose not to permit an appeal, and in any event it is no longer reasonable after the denial for unnamed class members to rely on the named plaintiffs to protect their interests.[7]

---

[6] We need not decide whether *American Pipe* tolling ended when the supreme court issued its opinion and judgment on February 15, 2008, or when the supreme court issued its mandate on March 28, 2008. As explained below, Clark's claims are timely using either date.

[7] *See* Fed. R. Civ. P. 23(f); *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375–6 (5th Cir. 2013); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1380–85 (11th Cir. 1998) (en banc) (collecting cases).

9

These cases are distinguishable because unlike in the federal system, interlocutory orders of Texas courts granting or denying class certification are appealable as of right. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3). Moreover, the trial court in this case granted class certification. As the Fifth Circuit has recognized, once a class has been certified, "members of the certified class may continue to rely on the class representative to protect their interests through the entire prosecution of the suit, including appeal." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 520–21 (5th Cir. 2008); *see also id.* at 517 (discussing "the bedrock premise that a party who sues on a cause of action tolls the statute of limitations during the entire prosecution of the action, including the prosecution of any appeal; otherwise, a plaintiff could not count on an appeal to protect his or her rights"). A contrary rule would require certified class members to intervene or file individual suits while the appeal was pending, leading to the "'needless multiplicity of actions'" that tolling was intended to prevent and "ignor[ing] the intended benefit of certification—efficient representation of a class of claimants." *Id.* at 521 (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 351 (1983)).

ConocoPhillips also points to two federal district court decisions holding that tolling ceased when the court of appeals issued its judgment reversing a district court's class certification order. According to these decisions, plaintiffs no longer had reason to rely on the named plaintiffs to advance their claims once the court of appeals issued its judgment, and the subsequent issuance of the mandate was merely a formality.[8] Another federal district court has disagreed, concluding that once a class is certified, tolling continues through all appellate proceedings until the case is returned to the district court by way of a mandate reversing class

---

[8] *See Kelly v. Capital One, N.A.*, 717 F. Supp. 2d 805, 807–08 (E.D. Wis. 2010); *Davis v. U.S. Steel Corp.*, 528 F. Supp. 220, 221–22 (E.D. Pa. 1981).

certification.[9]

We conclude that the federal district court decisions ConocoPhillips cites are likewise not on point given the differences between state and federal appellate procedure. In the federal system, a court of appeals issues its mandate following the denial of any rehearing and does not await the possibility of review by the Supreme Court of the United States unless a special stay is sought. *See* Fed. R. App. P. 41. As discussed above, however, Texas has an express rule that the judgment of a court of appeals hearing an interlocutory appeal only takes effect when the mandate issues, and the mandate need not issue while a party seeks review in the Supreme Court of Texas. *See* Tex. R. App. P. 18.1(a), 18.6. Thus, when a Texas court of appeals issues a judgment reversing a class certification order but has not yet issued its mandate, and the class representatives seek supreme court review, we hold it is reasonable for unnamed plaintiffs reading the plain language of these Texas rules to continue relying on their class representatives to protect their interests.

Indeed, this case showed that such reliance was well founded because the class representatives persuaded the supreme court to reverse this Court's judgment decertifying revised Subclass 2. *See Bowden*, 247 S.W.3d at 708. If ConocoPhillips were correct that tolling ended when this Court issued its judgment in May 2003, thousands of unnamed subclass members could protect their rights only by intervening in the trial court or filing their own new lawsuits and by pursuing their separate claims over the years that the certification issue was pending before the supreme court, only to abandon those claims if the supreme court reinstated the certification of subclasses in which they still wished to participate. Such a proliferation of suits and accompanying waste of party and

---

[9] *In re Initial Pub. Offering Sec. Litig.*, 617 F. Supp. 2d 195, 199 n.20 (S.D.N.Y. 2007).

judicial resources is the very result that the tolling doctrine was designed to prevent. *Taylor*, 554 F.3d at 521; *see Crown, Cork & Seal*, 462 U.S. at 350–51; *American Pipe*, 414 U.S. at 553–54 (observing that "a rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions" to intervene and "would deprive . . . class actions of the efficiency and economy of litigation which is a principal purpose of the procedure").

Decisions on tolling should "balance the competing interests of class action litigation (efficiency and economy)" against "those of statutes of limitation (protection against stale claims)." *Odle*, 747 F.3d at 320. As we have explained, continuing tolling through supreme court review promotes efficiency and economy. In addition, the filing of the class action provided ConocoPhillips with stale-claim protection by giving it notice of the claims Clark raises and the general identities of the plaintiffs who had such claims, allowing it to preserve relevant evidence and witnesses. *See Crown, Cork & Seal*, 462 U.S. at 352–53. ConocoPhillips contends that the length of tolling is abusive and that allowing Clark's individual claims disturbs society's interest in repose. But it is ConocoPhillips that for many years fought against class-based resolution of these claims; the result of its success is that it must now defend timely individual lawsuits alleging those same claims. *Odle*, 747 F.3d at 323 n.45; *see Crown, Cork & Seal*, 462 U.S. at 353 ("[A]lthough a defendant may prefer not to defend against multiple actions in multiple forums once a class has been decertified, this is not an interest that statutes of limitations are designed to protect.").

## C. Clark timely intervened after tolling ceased.

Finally, we turn to the question whether Clark timely intervened after the supreme court's affirmance of this Court's judgment decertifying revised Subclass 1 brought tolling to an end. We conclude that he did so.

The limitations period governing underpayment of royalty claims is four years—or at least 1,460 days[10]—from the date the claim accrues. *See Houston Endowment Inc. v. Atlantic Richfield Co.*, 972 S.W.2d 156, 159 (Tex. App.— Houston [14th Dist.] 1998, no pet.) (applying four-year breach-of-contract statute of limitations to case involving payment of oil and gas royalties). Unless addressed by the lease, a claim regarding underpayment of royalties accrues ninety days after the end of the calendar month in which the produced gas is sold. *See* Tex. Nat. Res. Code Ann. § 91.402(a)(2) (West 2011).

Using this accrual rule, there is no dispute that Clark's earliest claim accrued on April 1, 1997. A total of 687 days had passed when the *Bowden* class-action lawsuit was filed on February 16, 1999, tolling the running of the limitations period. The running of limitations remained tolled at least until February 15, 2008, the day the supreme court issued its opinion and judgment finally rejecting the trial court's certification of revised Subclass 1. *See supra* at 9 n.6; *Grant*, 725 S.W.2d at 370. Clark intervened in the *Bowden* litigation 728 days later on February 12, 2010. Thus, a total of 1,415 days had passed between the accrual of Clark's earliest potential claim and Clark's intervention.

---

[10] The limitations period may be longer if it includes any leap days. In this case, the limitations period was running during one leap day (February 29, 2008) if tolling ended when the supreme court issued its opinion and judgment on February 15, 2008, but not if tolling ended when the supreme court issued its mandate on March 28, 2008. *See supra* at 9 n.6. We need not decide when tolling ended, however. As explained above, Clark's claims are timely even if tolling ended on the earlier judgment date and the limitations period was 1,461 days (including one leap day).

Because the four-year limitations period had not yet run on Clark's earliest possible claim at the time of his intervention, we hold the trial court erred when it granted ConocoPhillips' motion for summary judgment on its limitations defense. We sustain Clark's single issue on appeal.

## CONCLUSION

Having sustained Clark's issue on appeal, we reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.


/s/    J. Brett Busby
        Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.