# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-31242

United States Court of Appeals
Fifth Circuit

**FILED**
April 4, 2018

Lyle W. Cayce
Clerk

MARGARET HERSTER; SCOTT SULLIVAN,

     Plaintiffs-Appellants,

v.

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY; ROD PARKER; KEN CARPENTER; A.G. MONACO; JENNIFER NORMAND; MIMI RUEBSAMEN; KIMBERLY ARP,

     Defendants-Appellees

Appeals from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Chief Judge:

Margaret Herster ("Herster") and her husband Scott Sullivan ("Sullivan") appeal the dismissal of their claims against the Board of Supervisors of Louisiana State University ("LSU") related to alleged gender discrimination. Prior to the jury trial for this case, the district court granted LSU's motion for summary judgment dismissing Herster's Louisiana state law spoliation claim. Subsequently at trial, the district court granted LSU's motions for judgment as a matter of law dismissing Herster's Title VII gender discrimination in pay claim and her Louisiana whistleblower statute claim.

No. 16-31242

Sullivan's claim for loss of consortium was also dismissed. Herster and Sullivan assert that the district court erred in dismissing their claims. We disagree. For the reasons set out below, we AFFIRM.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### a.  Factual Background

Herster and Sullivan began their employment at LSU in 2009—Herster as a part time Instructor of Digital Art in LSU's College of Art + Design (the "School of Art") and Sullivan as a Professor of Law at LSU's Law Center (the "Law Center"). During the interview process for his Professor of Law position at the Law Center, Sullivan inquired about the possibility of his wife, Herster, also obtaining a faculty position at LSU. After receiving Herster's credentials and qualifications, the School of Art agreed to employ Herster. The Law Center initially provided some of the funding for Herster's position.

Once Herster began her employment at the School of Art, she immediately began to believe that she was being asked to do substantially more work than what her part-time Instructor position should entail. In addition to teaching classes, the Director of the School of Art, Rod Parker ("Parker"), appointed Herster as the Area Coordinator of Digital Art, a position that required her to perform administrative duties.[1] Because Herster believed that Parker was "trying to get [her] to do twice the work of a full-time faculty member at half the pay of a full-time faculty member" she often asked Parker to clarify what her duties were and whether she could receive more than her $25,000 yearly salary.

At trial, Herster stated that Parker's responses to her requests ranged from, "Okay, I hear you. That does sound right," to "I'll try and do something; I'll go talk to someone about it," to allegedly threatening her on one occasion.

---

[1] Generally, a faculty member is not compensated more for being an Area Coordinator.

No. 16-31242

According to Herster, in November 2009 Parker responded to her request for more pay by stating, "I thought you were a trailing spouse. I thought you were going to have children and be happy, like Jackie Parker."[2] Parker additionally told Herster that she was acting like an "eight year old" and a "princess." Herster stated that Parker repeatedly called her a trailing spouse and remarked that she should just have babies and be happy.

In January 2011, Herster's title of part-time Instructor of Digital Art was changed to a full-time Professional-in-Residence position. Although Herster claims that her duties at the School of Art did not change, Herster's full time Professional-in-Residence title increased her yearly salary to $41,000. The School of Art's Professional-in-Residence appointment had to be renewed annually and was not a tenure track position.

Even with the title change, Herster claimed that she was compensated less than her male colleagues with similar duties. Herster subsequently filed a series of internal complaints against the School of Art alleging sex discrimination, sexual harassment, and the illegal collection of course fees.[3] Herster's internal complaints of sexual discrimination and harassment to LSU's Human Resources department led to Herster filing a charge with the EEOC alleging that LSU discriminated against her because of her gender and that she had been subjected to a hostile work environment.[4]

In February 2012, Herster sent a letter to the Dean of the School of Art, Ken Carpenter ("Carpenter"), stating that course fees were being improperly collected from students. At the beginning of classes for each semester, the professors and instructors in the School of Art were asked to pass out course

---

[2] Jackie Parker was another woman Parker referred to as a "trailing spouse" at the School of Art.

[3] After an internal investigation of Herster's complaints, LSU found no evidence of sex discrimination, harassment, or hostile work environment.

[4] Herster received a notice of her right to sue from the EEOC in January 2013.

No. 16-31242

fee forms to students interested in paying the School of Art directly for art supplies such as special inks, screens, paints, clay, and similar items that would be used during classes. The students at the School of Art were offered this option as an alternative to purchasing all of the supplies for each class independently.

Because Herster believed that the course fees imposed on the School of Art students were illegal, she told Carpenter that "[t]he disparity between the School of Art's practices and University policy and state law are serious. . . . [T]he School of Art is engaged in a surreptitious tuition raise in violation of the Louisiana Constitution." An internal audit by LSU indicated that the School of Art's imposition of the course fees had not been approved by the Louisiana state legislature. The audit report concluded that since 2010, the School of Art had charged approximately $28,000 annually in unapproved course fees and that some of the fees were used for purposes contrary to LSU policy. Some of the course fees were reportedly used to purchase items such as large screen monitors, scanners, and iPads for faculty members rather than for the intended purpose of purchasing art supplies for student use in the classroom.

In March 2012, the day after Carpenter forwarded Herster's course fee letter to Parker, Parker sent an email to Herster advising her that a faculty member panel would be conducting an annual reappointment review within the month to evaluate whether to renew her Professional-in-Residence appointment. The faculty member panel would also review whether three other faculty members' contracts should be renewed at this time. Professor Kimberly Arp ("Arp"), the School of Art's Tenured-Faculty Coordinator, was the chair of the faculty member panel determining whether Herster's Professional-in-Residence appointment should be renewed.

No. 16-31242

The faculty member panel vote concluded with the decision not to renew Herster's appointment—fifteen faculty members voting against the appointment renewal and two faculty members voting for the appointment renewal. In an official report of the meeting required by LSU policy, Arp stated that one of the main reasons for the decision was that Herster's concept of the Professional-in-Residence position did not match with the School of Art's expectations of her. Arp pointed out that Herster refused to teach certain courses, received poor teaching evaluations, and lacked sufficient creative activity. Herster internally appealed the decision to have it reconsidered, which resulted in another vote against renewal of her Professional-in-Residence appointment. In the report from the second meeting, Arp recounted the same reasons mentioned previously but provided more detail, and noted that Herster's lack of collegiality with faculty influenced the decision.

Herster requested that Arp provide his personal notes from the faculty member panel meeting to her. Arp used his meeting notes to create his official report of the decision not to renew Herster's appointment. At first, Carpenter asked Arp to provide his notes to Herster but later emails from LSU's Human Resources department and Parker advised Arp not to turn over his notes to Herster. After the Executive Vice Chancellor and Provost at LSU approved the School of Art's decision not to renew Herster's appointment, Arp shred his notes from the faculty member panel meeting. Arp's usual practice was to shred his notes after the employment decision from the meeting was made final.

LSU subsequently terminated Herster in January 2013 after her Professional-in-Residence appointment term ended.

### b. Procedural History

In January 2013, Herster and Sullivan filed this lawsuit against LSU and individual defendants associated with LSU alleging numerous state law and federal claims. Relevant to this appeal, before the jury trial began, the district court granted LSU's motion for summary judgment dismissing Herster's Louisiana state law spoliation claim. Herster's claims regarding gender discrimination in pay in violation of Title VII, hostile work environment in violation of Title VII, retaliation in violation of Title VII, and Louisiana's whistleblower statute were presented to a jury at trial in December 2016. After Herster's case-in-chief, LSU moved for judgments as a matter of law on Herster's claims. The district court granted LSU's motions for judgment as a matter of law for Herster's Title VII gender discrimination in pay claim, Title VII hostile work environment claim, and Louisiana whistleblower statute claim. The district court permitted the two Title VII retaliation claims against LSU to be submitted to the jury. The jury reached a verdict against Herster for both of her retaliation claims. Herster and Sullivan timely appealed.

## II.    DISCUSSION

Herster and Sullivan do not challenge on appeal the jury's verdict, the dismissal of Herster's Title VII hostile work environment claim, or the dismissal of the claims against the individual defendants associated with LSU. Accordingly, the three issues on appeal are: (1) whether the district court properly granted LSU's motion for judgment as a matter of law for Herster's Title VII gender discrimination in pay claim; (2) whether the district court properly granted LSU's motion for judgment as a matter of law for Herster's Louisiana whistleblower statute claim; and (3) whether the district court

properly granted LSU's motion for summary judgment for Herster's Louisiana state law spoliation claim.[5] This court will address each issue in turn.

### a. Standard of review for the Title VII gender discrimination in pay claim and Louisiana whistleblower statute claim

This court reviews the district court's ruling on a motion for judgment as a matter of law de novo. *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 854 (5th Cir. 2010). All of the evidence in the record must be examined as a whole, including evidence that does not support the non-moving party's case. *Id.* "[W]e must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party." *Id.* Credibility determinations, weighing the evidence, and drawing reasonable inferences from the facts are within the province of the jury. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 574 (5th Cir. 2003) (per curiam). A motion for judgment as a matter of law is properly granted where there is no legally sufficient evidence upon which the jury could find for a party on its claim. *Carmona*, 604 F.3d at 855. "There is no legally sufficient evidence upon which a jury could find for a party where the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict." *Id.*

### b. Title VII gender discrimination in pay claim

Herster argues that this is a rare case where there is direct evidence of discrimination. Even if this court holds that there was no direct evidence presented by Herster, Herster avers that she presented sufficient

---

[5] Sullivan appealed the dismissal of his loss of consortium claim. However, Sullivan's loss of consortium claim is waived because it was not briefed on appeal. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal. . . . A party who inadequately briefs an issue is considered to have abandoned the claim."); *see also McNeal v. Roberts*, 129 F. App'x 110, 111 (5th Cir. 2005) (per curiam) (unpublished) (dismissing claim for loss of consortium because of the failure to brief on appeal).

circumstantial evidence to satisfy the *McDonnell Douglas* framework for her discrimination claim. We disagree.

Under Title VII, an employer cannot "fail or refuse to hire or [ ] discharge any individual, or otherwise [ ] discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "A Title VII plaintiff may make out a prima-facie case of discrimination using either direct or circumstantial evidence." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994)).

The framework of *McDonnell Douglas Corp. v. Green* and its progeny applies to Title VII pay discrimination claims when there is no direct evidence of discrimination, and the plaintiff must prove discrimination by circumstantial evidence. *See* 411 U.S. 792, 802–05 (1973); *Giles v. Shaw Sch. Dist.*, 655 F. App'x 998, 1002 (5th Cir. 2016) (unpublished) (citing *Lee v. Conecuh Cty. Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir. 1981)). One of the requirements under the *McDonnell Douglas* framework for Herster's gender discrimination in pay claim is that Herster must show that she was paid less than a proffered comparator, not in her protected class, for work requiring substantially the same responsibility. *See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522–23 (5th Cir. 2008). The proffered comparator must be similarly situated to Herster for Herster to satisfy the *McDonnell Douglas* test. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–61 (5th Cir. 2009). A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications. *See Lavigne v. Cajun Deep Founds., L.L.C.*, 654 F. App'x 640, 646 (5th Cir. 2016) (per curiam) (unpublished).

No. 16-31242

Here, the district court correctly concluded that Herster failed to show that she "was paid less than a [male comparator] for work requiring substantially the same responsibility." *See Taylor*, 554 F.3d at 522. "By properly showing a significant difference in job responsibilities, [LSU] can negate one of the crucial elements in [Herster's] prima facie case" of discrimination. *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. Unit A May 1981); *see also Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 832 n.2 (5th Cir. 2015) (per curiam) (unpublished) ("[A] plaintiff who intermittently performed the same duties as a comparator was not sufficient to rebut the . . . differences in responsibility." (quotation marks omitted)).

Frederick Ostrenko ("Ostrenko") and Jesse Allison ("Allison"), presented as comparators by Herster, were both Assistant Professors rather than Professionals-in-Residence. The Assistant Professor position is a tenure track role that requires research as a condition of employment. In contrast to an Assistant Professor, a Professional-in-Residence like Herster was not required to research or seek to obtain research grants.

Indeed, Herster's proffered comparators were called on to do more than Herster. Ostrenko's position required him to teach in LSU's Center for Computation and Technology in addition to his responsibilities at the School of Art. Allison taught in LSU's School of Music and LSU's Center for Computation and Technology in tandem with his role at the School of Art. The only comparator offered by Herster who was also a Professional-in-Residence, Matthew Savage ("Savage"), had greater qualifications and responsibilities than Herster. Specifically, Savage has a Ph.D, unlike Herster, and was assigned a larger course load than Herster since he was assigned to teach five lecture format classes in Art History.

Thus, no reasonable juror could find that Herster presented sufficient circumstantial evidence of discrimination because she failed to show "that [her] circumstances [were] nearly identical to those of a better-paid employee who is not a member of [her] protected class." *See Taylor*, 554 F.3d at 523 (quotation marks omitted); *see also Mengistu v. Miss. Valley State Univ.*, No. 17-60667, 2018 WL 1108511, at *2 (5th Cir. Feb. 27, 2018) (per curiam) (unpublished) (quoting *Taylor*, 554 F.3d at 523).

Herster additionally did not show direct evidence of discrimination. "The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *See Portis*, 34 F.3d at 328 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Id.* at 329. A statement or document which shows "on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action [is] direct evidence of discrimination." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).

Here, Parker's comments, at most, infer that gender was a factor in the decision concerning Herster's compensation. *See id.* at 992 ("Direct evidence is evidence which, if believed, proves the fact without inference or presumption."). Herster builds her case of direct evidence of discrimination upon the faulty foundation of Parker's "trailing spouse" commentary. To begin, an individual can be referred to as a "trailing spouse" irrespective of his or her gender. An inferential leap is also required to prove that Herster was paid less because of her gender when analyzing Parker's comments of "I thought you were going to have children and be happy" and that Herster was acting like a "princess." Parker's reference to another woman who he considered to be a

trailing spouse, Jackie Parker, when delivering his remarks to Herster does not amount to direct evidence of discrimination because an inference is required to get from this statement to the conclusion that gender was a basis for setting Herster's compensation. Notably, Herster's trial counsel even stated, "Mr. Parker's remark regarding [Herster] as a . . . trailing spouse that takes care of her children and is happy infers gender" when arguing for the denial of LSU's motion for judgment as a matter of law for this claim.

Moreover, the evidence of the alleged direct discrimination presented by Herster during the trial was simply much weaker than what this court has accepted as direct evidence of discrimination in prior cases. In *Portis v. First National Bank of New Albany*, the plaintiff sued her employer for gender discrimination after her demotion. *See* 34 F.3d at 326. At the close of evidence, the district court granted the defendant's motion for judgment as a matter of law. *Id.* The plaintiff's testimony discussed several occasions where her supervisor told her that she "wouldn't be worth as much as the men would be to the bank" and "she would be paid less *because she was a woman.*" *Id.* at 329. This court held that no inference was required to conclude that the plaintiff was treated differently because of her sex and therefore the statement constituted direct evidence of discrimination. *Id.*

In *Etienne v. Spanish Lake Truck & Casino Plaza,* the plaintiff brought a Title VII lawsuit alleging that she was not being promoted to a managerial position because of her race. 778 F.3d at 474. This court held that the district court granted the defendant's motion for summary judgment in error because direct evidence established plaintiff's prima facie discrimination claim. *See id.* at 477. The plaintiff presented an affidavit that stated that the general manager allocated responsibilities to employees based on the color of their skin and did not allow "dark skin black persons to handle any money." *Id.* at 476.

The general manager remarked on several occasions that he thought the plaintiff "was too black to do various tasks." *Id.*

In *Jones v. Robinson Property Group*, the plaintiff alleged that he was not hired as a poker dealer because of being an African American. *See* 427 F.3d at 990. Evidence was presented by the plaintiff that the poker room manager responsible for the hiring decision stated "the[y] were not going to hire a black person unless there were extenuating circumstances." *Id.* at 993. One of the employees stated that the poker room manager told him that, "maybe I've been told not to hire too many blacks in the poker room." *Id.* Additional evidence showed that the poker room manager used racially derogatory terms often and stated that "good old white boys don't want black people touching their cards in their face." *Id.* This evidence constituted direct evidence of discrimination. *Id.* As these cases demonstrate, Herster's alleged direct evidence of discrimination is far from the type of evidence that this court has previously held to be direct evidence of discrimination.

Herster's assertion that Parker's comments amount to more than "stray" remarks that constitute direct evidence of discrimination is likewise meritless. Comments are not merely stray and may constitute direct evidence of discrimination if the remarks are: (1) related to gender; "(2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne*, 778 F.3d at 476. When the proximity in time of the comments to the challenged employment decision is unclear, the proximity in time factor can be satisfied when comments were routinely made. *Id.* Similar to the previous direct evidence analysis, our ultimate focus in applying this test "is on whether the comments prove[] without inference or presumption[] that [gender] was *a* basis in employment

decisions" at LSU. *See id.* (quoting *Jones*, 427 F.3d at 993) (quotation marks omitted).

The proximity in time of Parker's comments to the challenged employment decision regarding Herster's compensation is unclear. Also, Parker's alleged repetitive comments about Herster being a trailing spouse and having babies still requires an inference to reach the conclusion that Herster's gender served as basis for her compensation. *See id.* The comments made by Parker are stray remarks that fail to provide direct evidence of discrimination for Herster's gender discrimination in pay claim. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) ("Where comments are vague and remote in time they are insufficient to establish discrimination." (quotation marks and alterations omitted)).

In sum, because Herster failed to show either circumstantial evidence or direct evidence of discrimination, the district court correctly granted LSU's motion for judgment as a matter of law dismissing this claim.

### c. Louisiana whistleblower statute claim

The district court granted LSU's motion for judgment as a matter of law for Herster's Louisiana whistleblower statute claim, LA. REV. STAT. § 23:967. Herster sought to prove that LSU retaliated against her for disclosing that the School of Art imposed unauthorized course fees that violated Article VII, § 2.1 of the Louisiana Constitution. It is undisputed that LSU did not receive authorization from the Louisiana state legislature to collect the course fees from students, which were intended to purchase art supplies such as special inks, paints, and clay that would be used by students during classes. Nevertheless, the district court properly dismissed Herster's claim.

A violation of Louisiana's whistleblower statute occurs if: (1) LSU violated Louisiana law through a prohibited workplace practice; (2) Herster

advised LSU of the violation; (3) Herster threatened to disclose or disclosed the prohibited practice; and (4) Herster was terminated as a result of her threat to disclose or because of the disclosure of the prohibited practice. *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015). Herster must prove that LSU "committed an *actual* violation of [Louisiana] law." *Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir. 2015) (emphasis in original).

Article VII, § 2.1 of the Louisiana Constitution requires that any fee assessed by the state of Louisiana and some of its subunits, including LSU, be enacted by a two-thirds vote of the Louisiana state legislature. *La. Pub. Facilities Auth. v. All Taxpayers, et al.*, 868 So. 2d 124, 128–29 (La. Ct. App. 2003); *see also* No. 96-353 Op. La. Att'y Gen. (1996) ("As an arm of the state, [LSU] is subject to the requirement of Article 7, Section 2.1(A) of the Louisiana Constitution (1974), with respect to the increase of fees assessed by the University."). Article VII, § 2.1 of the Louisiana Constitution states:

> Any new fee or civil fine or increase in an existing fee or civil fine imposed or assessed by the state or any board, department, or agency of the state shall require the enactment of a law by a two-thirds vote of the elected members of each house of the legislature.

LA. CONST. art. VII, § 2.1(A).

The term "fee" in Article VII, § 2.1 is not defined in the Louisiana Constitution. The Louisiana Supreme Court has also not interpreted the meaning of "fee" in Article VII, § 2.1. If the Louisiana Supreme Court has not ruled on an issue, then this court makes an "*Erie* guess" and "determine[s] as best we can" what the Louisiana Supreme Court would decide. *See Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015) (quotation marks and alterations omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Because there are varied uses of the word "fee" in the laws of the state of Louisiana, it is unclear from a plain reading of Article VII,

§ 2.1 of the Louisiana Constitution what meaning should be attributed to the word. "[W]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 998 So. 2d 16, 27 (La. 2008) (citing LA CIV. CODE art. 10; *Fontenot v. Reddell Vidrine Water Dist.*, 836 So. 2d 14, 20 (La. 2003)).

We need not make an *Erie* guess about the meaning of "fee" here because Herster failed to show that LSU actually violated the Louisiana Constitution. Importantly, Herster fails to point to any authority that establishes that the imposition of any type of course fee by the School of Art or LSU constitutes a violation of Louisiana law. Herster's and the LSU internal auditor's asserted beliefs that the course fee imposed by the School of Art constituted a violation of the Louisiana Constitution is inadequate to prove an actual violation of Louisiana law. "To qualify for protection under the Louisiana Whistleblower Statute, a plaintiff must prove that his employer committed an *actual* violation of state law." *Wilson*, 787 F.3d at 326 (emphasis in original); *see also Ross v. Oceans Behavioral Hosp. of Greater New Orleans*, 165 So. 3d 176, 180 (La. Ct. App. 2014) ("The plaintiff must prove an *actual* violation of a state law, not just a good faith belief that a law was broken.") (emphasis in original); *Accardo v. La. Health Servs. & Indem. Co.*, 943 So. 2d 381, 386–87 (La. Ct. App. 2006) (per curiam) ("[B]ased on the legislative history of the statute, which deleted the phrase 'reasonably believes is in violation of law' and substituted the phrase 'that is in violation of state law', it is appears that the legislature intended the requirement of a violation of state law.").

Herster's argument based on the Louisiana First Circuit Court of Appeal's statement that "fees" are "those fees directly connected with LSU's principal governmental function of providing higher education" when it held

that the "fee" definition does not entail charges for LSU football tickets is similarly unavailing. *See La. Pub. Facilities Auth.*, 868 So. 2d at 136. The court only established that charges related to LSU football tickets fail to constitute a "fee" in Article VII, § 2.1, and did not in any way affirmatively establish that LSU's imposition of an unapproved course fee amounts to a constitutional violation. *See id.* Herster, again, is left with nothing more than an unverified belief that there was a state law violation rather than the requisite proof of "an *actual* violation of state law." *See Wilson*, 787 F.3d at 326 (emphasis in original).

Additionally, contrary to Herster's belief that Article VII, § 2.1 encompasses "any and all new fees" at LSU, the intended scope of the definition of "fee" in Article VII, § 2.1 has been interpreted by the Louisiana First Circuit Court of Appeal and the Louisiana Attorney General as more constricted.[6] In *Louisiana Public Facilities Authority*, the Louisiana First Circuit Court of Appeal rejected the contention that there was an intention to give a sweeping interpretation to the term "fee" in Article VII, § 2.1 when it held that costs charged by LSU for football tickets did not constitute a "fee" under the constitutional provision. *See* 868 So. 2d at 136. The Louisiana Attorney General also opined that charges imposed by LSU related to "student housing, food services, book store merchandise, medical or veterinary services and admittance to extracurricular events are not directly a part of the governmental function of providing higher education, thus, charges for these goods and services would not be considered fees" under Article VII, § 2.1 of the Louisiana Constitution. *See* No. 1-165 Op. La. Att'y Gen. (2001). In light of both

---

[6] This court is not bound by a decision of an intermediate Louisiana court or an opinion of the Louisiana Attorney General but it can recognize these authorities as persuasive. *See Katrina Canal Breaches Litig.*, 495 F.3d at 206; *see also Dunn v. City of Kenner*, 187 So. 3d 404, 415 n.14 (La. 2016).

of these readings of "fee," Herster's broad interpretation which includes "any and all new fees" imposed by LSU is not instructive for this case.

Thus, the district court was correct to dismiss Herster's claim under the Louisiana whistleblower statute.

### d. Spoliation claim

The district court properly granted LSU's motion for summary judgment dismissing Herster's Louisiana state law spoliation claim. This court reviews a district court's order granting summary judgment de novo, viewing all evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor. *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Crose v. Humana Ins. Co.*, 823 F.3d 344, 347 (5th Cir. 2016) (quoting *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 201 (5th Cir. 2014)).

The Louisiana tort of spoliation of evidence is a cause of action for an intentional destruction of evidence to deprive an opposing party of its use. *See Burge v. St. Tammany Par.*, 336 F.3d 363, 374 (5th Cir. 2003). Spoliation of evidence may not be based on the negligent destruction of evidence. *See id.* at 374 n.5. Here, despite the possible factual issue about the amount of control LSU had over Arp's notes, Herster's spoliation claim was properly dismissed. No LSU policy required Arp to maintain, preserve, or provide his notes that were taken during the faculty member panel meeting that included a discussion of Herster's reappointment. Herster additionally references no evidence showing that LSU instructed or suggested to Arp to shred or

17

intentionally destroy his notes from the meeting. *See id.* One of the required elements for spoliation is "an intentional destruction of evidence." *See id.* at 374; *see also Hodges v. Mosaic Fertilizer LLC*, 289 F. App'x 4, 7 (5th Cir. 2008) (per curiam) (unpublished) ("Appellants cite no evidence, other than their mere allegation, that tends to show that [the defendant] intentionally destroyed the valve . . . [t]herefore, the district court correctly dismissed on summary judgment Appellants' spoliation of evidence claim."); *Zurich Am. Ins. Co. v. Queen's Mach. Co.*, 8 So. 3d 91, 94, 97–98 (La. Ct. App. 2009); *Longwell v. Jefferson Par. Hosp. Serv. Dist. No. 1*, 970 So. 2d 1100, 1106 (La. Ct. App. 2007) (holding that a spoliation claim cannot stand when the summary judgment record is "devoid of evidence" that the defendant intentionally destroyed the evidence). The district court correctly granted LSU's motion for summary judgment dismissing Herster's spoliation of evidence claim.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court dismissing Sullivan's and Herster's claims.