# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 4, 2026

Lyle W. Cayce
Clerk

No. 25-30293

Carla White,

*Plaintiff—Appellant*,

*versus*

North Louisiana Criminalistics Laboratory,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:21-CV-1850

Before Jones, Clement, and Richman, *Circuit Judges*.

Per Curiam:[*]

After being fired from the North Louisiana Criminalistics Laboratory ("NLCL"), Carla White alleged sex discrimination and retaliation. The district court granted NLCL's motion for summary judgment. Because White cannot establish a prima facie case of sex discrimination and does not produce evidence that NLCL's reasons were pretext for retaliation, the judgment of the district court is AFFIRMED.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-30293

I.

White started working at NLCL in 2005, and she became a firearms examiner in 2007. In 2018, White was selected as NLCL's coordinator for the Bureau of Alcohol, Tobacco, Firearms, and Explosives' National Integrated Ballistic Information Network ("NIBIN"). In May 2020, White began working as NLCL's firearms section supervisor. When she received this promotion, Director Jimmy Barnhill told her that she was his last choice. Additionally, she was told that she would only serve as the supervisor on an interim basis and would have to wait before receiving a pay raise.

Barnhill was replaced as system director by Joey Jones, Ph.D. At a gathering at a brewery in May or June of 2020, White and other female coworkers informed Jones about instances of Barnhill's inappropriate behavior toward female employees.

White had a rocky start as supervisor. Following a meeting in July, Jones noted, "I have concerns about her being supervisor material. She is easily flustered . . . She is unwilling to extend her workdays in order to create time . . . Still, she continues to show up after 0800 every day." Furthermore, White failed to create written policies and procedures for the firearms section, despite Jones asking her to do so.

In June 2020, White began training Philip Stout. In August, White met with Jones and raised concerns about Stout's grammar and spelling mistakes in his reports. White alleged that Stout was dyslexic, and she "was very negative" about "the lab hiring someone with a disability." In response, Jones told her that even if Stout has a disability, it does not excuse her from training him. At this same August meeting, White complained to Jones that she was being discriminated against because of her sex. Later, Stout informed Jones that he does not have a disability, and Stout was offended that White insinuated that he had dyslexia.

2

Following White's August meeting with Jones, Jones inspected the firearms evidence room. Jones found poor evidence handling procedures, unsealed gun boxes and evidence bags, and cases that had lingered untouched for over a year. Many of these issues were violations of the lab's written policies for evidence handling. Jones tried to offer White corrective instruction, but she responded with a combative attitude. White received an incident report and a corrective action plan.

In September, NLCL had a firearms meeting where White "dominated the conversations, spoke over individuals, and was extremely vocal with her displeasure [regarding] . . . guidance[] or changes suggested by management." After reviewing video footage from this meeting, Jones and NLCL leadership had a meeting and determined that it would be best if White "back away from supervisory duties."

Later that same day, White scheduled a meeting with NLCL leadership, including Jones and Barnhill, and requested to step down as interim supervisor. Jones accepted White's request and noted that he was planning on demoting her anyway. Jones told White that he was frustrated by her "tardiness and general negative attitude towards [management] and the staff." Furthermore, he expressed his "concern about [White] claiming [Stout] had dyslexia when he did not." Jones informed White that the staffing change was confidential and instructed her "not to reach out to anyone within the section or externally until" the staffing changes had been implemented.

That evening, White received a call from an ATF agent regarding an ongoing case, and White informed him that she may soon be removed as the NIBIN coordinator. White then texted a coworker about her conversation with the ATF and noted that an ATF employee said, "They are going to bat for me." The next day, White's coworker reported White's text message to

NLCL leadership. Jones asked White if she had called an ATF agent and discussed the staffing change. White initially said that she had not, but she admitted to the conversation after Jones showed her the text message that she had sent her coworker. Jones understood White's conversation with the ATF to be contrary to his instructions and believed that it was insubordination. Furthermore, he understood White's decision not to be forthcoming about her conversation with the ATF to be dishonest.

White was terminated. Jones listed a few reasons for firing White. First, Jones was concerned about her insubordination in talking to the ATF about her demotion following explicit instructions to keep this staffing change confidential until it was finalized. Second, Jones was frustrated by how White falsely accused Stout of being disabled and complained to other staff members about the lab hiring someone "with a learning disability." Third, Jones noted that White had long-term tardiness issues and frequently showed up late, even after receiving warnings.[1] Fourth, Jones referenced the incident report documenting White's poor evidence handling, violations of laboratory procedures, and allowing cases to sit untouched for over a year. Fifth, Jones noted that White responded to feedback with a combative attitude. Sixth, Jones noted that White had a negative impact on employee morale and that three other employees had expressed concerns that White had treated them with a dismissive attitude. Finally, Jones noted that White had routinely procrastinated on creating written standards for employees in her section.

White exhausted her remedies with the Equal Employment Opportunity Commission and received notice of right to sue. She filed suit

_____

[1] NLCL raised the issue of tardiness with all employees, but White was one of the only ones who failed to remedy the issue.

in federal district court, advancing two causes of action under Title VII and the Louisiana Employment Discrimination Act: sex discrimination and retaliation. The district court found that White failed to establish a prima facie case for both causes of action, granted NLCL's motion for summary judgment, and dismissed White's claims with prejudice.

White timely appealed.

## II.

"This court reviews *de novo* an order granting summary judgment, 'applying the same standard as the district court.'" *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 381 (5th Cir. 2017) (quoting *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001)). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). Summary judgment is appropriate only when no reasonable jury "could differ as to the import of the evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). The court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment." *Smith v. Reg'l Transit Auth.* 827 F.3d 412, 417 (5th Cir. 2016) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995) (per curiam)). This court "need not accept the district court's rationale and may affirm on any grounds supported by the record." *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000).

## III.

White asserts two employment claims under Title VII and the Louisiana Employment Discrimination Act: sex discrimination and

retaliation.[2]  The same analysis applies to both statutes.  *See Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998).

### A.

For White's sex discrimination claim "[t]o survive summary judgment under *McDonnell Douglas*," she "must first present evidence of a prima facie case of discrimination."[3]  *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)); *see also Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).  "If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Davis*, 383 F.3d at 317.  "If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears[,] and the plaintiff must present evidence that the employer's proffered reason was mere pretext."  *Id.*

To establish a prima facie case, White must show "that she 1) is a member of a protected class; 2) was qualified for her position; 3) was subjected to an adverse employment action; and 4) was replaced by someone outside the protected class, or that other similarly situated persons were

---

[2] White concedes that she does not have a timely hostile work environment claim.

[3] White cites Justice Thomas's concurrence in *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 313–26, 145 S. Ct. 1540, 1548–55 (2025) to argue that the Supreme Court has abandoned the *McDonnell-Douglas* framework.  A two-justice concurrence does not provide adequate grounds for this court to depart from its own precedents applying the *McDonnell-Douglsas* framework.  Under the rule of orderliness, "only the en banc Fifth Circuit or the Supreme Court may overrule Fifth Circuit precedent." *Ford v. Mckesson*, 171 F.4th 332, 342 (5th Cir. 2026).  A "mere 'hint' of how the Court might rule in the future" is not sufficient for a panel of this court to ignore binding Fifth Circuit precedent. *United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013).

treated more favorably." *Septimus*, 399 F.3d at 609. The parties contest whether White can establish the fourth element and show that she "was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably." *Id.*

First, White was not replaced by someone outside of her protected class. After White's voluntary transfer, she served only as a senior scientist and firearms examiner. After White was fired from her senior scientist and firearms examiner position, NLCL hired Sonia Nunnery, a female, to serve as a firearms examiner and NIBIN coordinator.

While White's supervisor position was later filled by Stout, a male, this fact is immaterial because White was not employed as a supervisor at the time of the adverse action. On September 21, White scheduled a meeting with NLCL leaders and requested to step down as interim supervisor. At this meeting, it was determined that she would also be relieved of her duties as NIBIN coordinator. White admits that she wanted to step down and that she does not believe that NLCL's granting her request was retaliation.

Second, White fails to show that she was treated less favorably than her male coworkers. White argues that former firearms supervisor Richard Beighley was given less work than she was and was allowed to disregard certain tasks. However, White did not make any comparator arguments regarding Beighley in the district court. "A party forfeits an argument by failing to raise it in the first instance in the district court." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Additionally, White argues that she was treated less favorably than Alex King, a drug chemistry employee at a lab in Alexandria. King was terminated for missing work, not calling in, and failing to produce satisfactory work. King was fired, but he was rehired immediately. Finally, White argues that she was treated worse than Joshua DeBord, a drug chemistry employee in the Shreveport lab who purposely

violated lab procedures. Instead of being fired, DeBord was moved to a different section of the lab.

White's "proffered comparator must be similarly situated to [White] for [her] to satisfy the *McDonnell Douglas* test." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). In "determining whether a comparator is similarly situated," the court will consider factors such as "job responsibility, experience, and qualifications." *Id.* White does not advance any arguments showing that her "job responsibility, experience, and qualifications" were similar to King's or DeBord's. *Id.* White's failure to adequately brief this issue means it is forfeited. *Rollins*, 8 F.4th at 397. However, even if her argument were not forfeited, White's case is exceptionally weak, as employees "who work for different divisions of a company . . . generally will not be deemed similarly situated." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Finally, White cannot establish that King's and DeBord's conduct was sufficiently similar to her conduct that led to her being terminated. *Id.* at 260. "[C]onduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (quoting *Perez v. Tex. Dep't of Crim. Just., Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004)). While all three employees had allegations of misconduct, only White was reprimanded for being easily frustrated, falsely accusing a coworker of having a disability, responding to correction with a poor attitude, insubordination, lying about insubordination, and negatively impacting employee morale. Therefore, neither King nor DeBord is a valid comparator.

Because White cannot show either that she "was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably," she cannot establish her prima facie case for sex discrimination. *Septimus*, 399 F.3d at 609.

B.

"The *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation claims." *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 652 (5th Cir. 2025). To establish a prima facie case for retaliation, White must show "1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *Septimus*, 399 F.3d at 610.

The parties agree that an adverse employment action occurred, but they dispute the first and third elements of White's prima facie case. White's affidavit claims that she complained about sex discrimination on two separate occasions. Because there is no other summary judgment evidence corroborating White's affidavit, the district court ruled that White's alleged complaints were not enough for her to survive summary judgment. Indeed, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). White argues that the district court erred in discounting her affidavit, while NLCL argues that the district court is correct because White's statements were mere "abstract grumblings or vague expressions of discontent" that are not actionable complaints. *Hagan v. Echostar Satellite*, 529 F.3d 617, 626 (5th Cir. 2008) (internal quotation marks omitted) (quoting *Hagan v. Echostar Satellite*, Civ. Action No. H-05-1365, 2007 WL 543441, at *4 (S.D. Tex. Feb. 16, 2007)). The district court is likely correct that White does not provide enough evidence to demonstrate that her informal complaints were protected activity because she does not show that she made "clear to [her] employer that [she] was taking a position adverse to [her] employer." *Id.* at 628.

Nevertheless, it is not necessary for the court to conclusively decide whether White established a prima facie case. Although the district court did not write on the issue of pretext, it acknowledged that this case can also be resolved on the grounds that "White has failed to allege or sufficiently prove pretext." NLCL argued to the district court, and to this court, that even if White established her prima facie case for retaliation, she still cannot survive summary judgment without having offered evidence of pretext.

Assuming the existence of a prima facie case, the burden shifted to NLCL "to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Shahrashoob*, 125 F.4th at 653. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Id.* (internal quotation marks omitted) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000)). NLCL articulated several reasons for the adverse action, including insubordination, long-term tardiness, poor evidence handling, negative impact on employee morale, and disability discrimination against a subordinate. White then had the burden "to show that the reasons are 'a pretext for retaliation.'" *Id.* (quoting *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)). Moreover, to demonstrate pretext, White had to show that "the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist*, 730 F.3d at 454 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533 (2013)).

In the summary judgment context, "the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (internal quotation marks omitted) (quoting *Long v. Eastfield Coll.,* 88 F.3d 300, 308 (5th Cir. 1996)). White cannot meet this standard. White was removed from the NIBIN coordinator position and terminated in September 2020. Her complaints about her previous supervisor were made to the new supervisor

in May or June 2020. Subsequently, White's performance as a supervisor proved unsatisfactory. Moreover, she engaged in additional misconduct and violated a specific instruction not to talk about her transfer with external parties. She stirred up additional drama with a coworker by texting about her conversation with the ATF. Then, she was less than forthcoming about her conversation with the ATF after NLCL leadership confronted her about it. Only after this series of misconduct did NLCL decide to terminate her. The natural chronology of this evidence is that White's insubordination, dishonesty, and negative impact on employee morale were the but-for causes of her termination. White has not produced "a conflict in substantial evidence" to rebut this conclusion and create a triable issue of fact concerning pretext. *Id.* (quoting *Long,* 88 F.3d at 308). On this basis, her retaliation claim fails.

IV.

The judgment of the district court is AFFIRMED.